Dr. Charles W. HALPER,
Ph.D., Appellant,

v.

UNIVERSITY OF THE INCARNATE
WORD f/k/a Incarnate Word
College, Appellee.

No. 04–01–00808–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 11, 2002.

Rehearing Overruled Oct. 3, 2002.

Lonnie E. Chunn, Stephen R. Pilcher, Chunn & Pilcher, P.L.L.C., San Antonio, for appellant.

Larry E. Gee, Donna K. McElroy, Renee Forinash McElhaney, Cox & Smith Incorporated, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.

Opinion by: CATHERINE STONE, Justice.

Dr. Charles W. Halper, Ph.D. ("Halper") appeals a summary judgment granted in favor of the University of the Incarnate Word ("UIW") in a lawsuit arising out of UIW's denial of tenure to Halper and its decision not to renew Halper's employment contract. Halper presents two issues on appeal contending that summary judgment was improperly granted as to his breach of contract claim and as to his fraud/misrepresentation claim. We affirm the trial court's judgment.

## BACKGROUND

Halper was employed by UIW from July 3, 1989 through May 13, 1996, pursuant to a series of defined term contracts. In November of 1993, Halper's request for a promotion was denied. A memorandum dated November 19, 1993, from Roger Barnes, the chair of the Rank and Tenure Committee, was sent to Halper following a meeting between Halper and the committee to discuss Halper's application for promotion to Associate Professor. The memorandum stated that the chief concern of the committee had "to do with the area of scholarship and creativity, and the need to

demonstrate a fuller record of published and presented work."

After Halper's request was denied, the parties entered into an agreement pursuant to which Halper was employed as an Assistant Professor from August 18, 1994 through May 15, 1995. The agreement stated that it was "[s]ubject to all rights, privileges, and duties delineated in the College Faculty Handbook (revised edition, 1993, and subsequent modifications, Board approval 1994)." The agreement further stated that "[t]ermination of this contract is governed by Faculty Handbook policy, Chapter 3, Sections X and XI."

In November of 1994, Halper applied for tenure and promotion to Associate Professor. Halper was sent a letter from Barnes dated February 16, 1995, stating that the Rank and Tenure Committee decided not to recommend Halper for tenure and promotion. The letter stated that the "specific weaknesses noted by the Committee were in the areas of (1) scholarship and creativity, and (2) teaching." Barnes' notes from the committee's meeting indicate that Halper made a decision not to publish despite the scholarship requirement for tenure.

In response to a grievance filed by Halper, the grievance committee sent Halper a letter dated March 9, 1995. In the letter, the grievance committee noted that its role was not to substitute the grievance committee's judgment for that of the rank and tenure committee. The letter implies that the grievance committee only reviews the actions of the rank and tenure committee to ensure that proper procedures were followed. The letter states, "The element of your case which dealt with procedure was the perceived discrepancy between the letter of November 19, 1993 from Rank and Tenure regarding promotion, and its letter of February 16, 1995 regarding tenure." The grievance committee concluded that the discrepancy was not sufficient grounds for a grievance and found "that Ran[k] and Tenure followed due procedures, according to the common practice of the College in arriving at their decision."

After Halper's application for tenure and promotion was denied, Halper entered into an agreement pursuant to which Halper was employed as an Assistant Professor from August 17, 1995 through May 13, 1996. The agreement stated that it was "a terminal contract."

## STANDARD OF REVIEW

Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that element. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.-Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon*, 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in the non-movant's favor. *Id.*

We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore*, 981 S.W.2d at 269. A no-evidence summary judgment is improperly granted if

the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

## BREACH OF CONTRACT

■ Halper contends that his termination was subject to the restrictions for deciding not to reappoint contained in the Faculty Handbook and that the failure to comply with those restrictions was a breach of his employment agreement. However, Halper's employment agreement was for a defined term. Although the termination of the agreement during that defined term was subject to the restrictions contained in the Faculty Handbook, the agreement did not impose any contractual obligation on UIW to reappoint Halper after the term of the agreement had ended.

■ With regard to the denial of tenure, Halper contends that UIW's decision not to award tenure breached the restrictions on non-reappointment set forth in the Faculty Handbook, which were incorporated by reference into his employment agreement. An unsigned paper may be incorporated by reference in a signed agreement. *Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968); *Castroville Airport, Inc. v. City of Castroville,* 974 S.W.2d 207, 211 (Tex.App.-San Antonio 1998, no pet.). In order for an unsigned document to be so incorporated, the express language used in the signed document is not important provided the signed document plainly refers to the other writing. *Owen,* 433 S.W.2d at 166; *Castroville*

*Airport, Inc.,* 974 S.W.2d at 211. Because Halper's employment agreement incorporated the terms of the Faculty Handbook by reference, those terms became a part of the agreement, and UIW was contractually obligated to comply with them.

■ The Faculty Handbook defines non-reappointment as the decision not to award tenure. The Faculty Handbook sets forth five tests that the reasons given for non-reappointment must meet. Halper contends that UIW's reasons for denying tenure breached the following three tests:

1. They must not be arbitrary or capricious.

2. They must represent the deliberate exercise of professional judgment in the particular institutional circumstances.

3. They follow upon a probationary period during which the Academic Division Dean has evaluated the faculty member and provided him/her with appropriate feedback and opportunity for improvement.

UIW responds that so long as UIW properly followed its procedures in making its decision not to grant tenure, UIW's professional decision that Halper did not qualify for tenure is not subject to judicial review. We agree. As the Fifth Circuit has recognized:

> The tenure process—from the initial recommendations of the candidates by the professoriat to the ultimate review by university administrators and members of the Board of Regents—is intrinsically subjective. Such a determination is not readily scrutinized in the adversarial judicial forum. 'The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing on the appropriateness

of conferring academic tenure.' *Siu v. Johnson*, 748 F.2d 238, 245 (4th Cir. 1984).

*Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir.1992). As another court explained:

> A teacher's competence and qualifications for tenure or promotion are by their very nature matters calling for highly subjective determinations, determinations which do not lend themselves to precise qualifications and are not susceptible to mechanical measurement or the use of standardized tests. These determinations are in 'an area in which school officials must remain free to exercise their judgment' especially since these determinations present unique questions for judgment by those with expertise in the specialized academic area, capable of making professional evaluations of those elusive and intangible qualities and talents expected of the scholar and teacher. Courts are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another faculty member granted a promotion; in short, courts may not engage in 'second-guessing' the University authorities in connection with faculty promotions.

*Clark v. Whiting*, 607 F.2d 634, 639 (4th Cir.1979). Accordingly, in deciding whether UIW met the non-reappointment tests established by the Faculty Handbook, our judicial review must focus on the procedures followed, not the wisdom of the decision reached.

■ The summary judgment evidence conclusively established that the Rank and Tenure Committee reviewed Halper's application and thoroughly examined his qualifications. The Rank and Tenure Committee provided Halper with the opportunity to meet with the committee to discuss those qualifications. The evidence conclusively established that the basis for the committee's recommendation that tenure be denied is grounded in the criteria for promotion defined in the Faculty Handbook. The grievance committee's findings are further evidence that all required procedures were followed. Therefore, this evidence conclusively established that UIW's decision to deny tenure was not arbitrary or capricious and represented the deliberate exercise of professional judgment.

Halper contends that summary judgment was improperly granted because UIW breached the requirement that the academic division dean evaluate Halper and provide him with appropriate feedback and opportunity for improvement. The summary judgment evidence conclusively established that the academic division dean had evaluated Halper's work and recommended Halper for promotion. Therefore, the requirement in the Faculty Handbook that the academic division dean evaluate Halper's performance was satisfied. With regard to feedback and the opportunity for improvement, the summary judgment evidence conclusively established that the Rank and Tenure Committee met with Halper in November of 1993 when it denied his promotion and informed Halper in writing that the chief area of concern was the area of scholarship and creativity and the need to demonstrate a fuller record of published and presented work. The evidence further established that despite this feedback and opportunity for improvement, Halper elected not to research and publish, which are the established criteria for scholarship and creativity.

The evidence conclusively established that UIW did not breach the Faculty

Handbook requirements with regard to the procedures to be followed in making its tenure decision. Accordingly, summary judgment was properly granted as to Halper's breach of contract claim.

### FRAUD/MISREPRESENTATION

■ Halper also contends that summary judgment was improper as to his fraud/misrepresentation claim because UIW misrepresented that he would have the rights and privileges established in the Faculty Handbook with regard to tenure. UIW contends that Halper's at-will employment status bars his fraud/misrepresentation claim. In recognizing the general rule that at-will status will bar a fraud/misrepresentation claim, Texas courts have drawn a distinction based on the timing of the alleged misrepresentation. If the alleged misrepresentation was made after the employee began employment, the employee's at-will status will preclude a fraud claim; however, if the alleged misrepresentation was made before the employee commenced employment, the fraud claim is not barred. *See Offshore Petroleum Divers, Inc. v. Cromp,* 952 S.W.2d 954, 955 (Tex.App.-Beaumont 1997, pet denied); *see also Crow v. Rockett Special Utility Dist.,* 17 S.W.3d 320, 329–30 (Tex.App.-Waco 2000, pet. denied) (noting to prevail on defense of at-will status, the defendant must establish: (1) the employee is at-will; and (2) the representations were made after the employee began his employment). In this case, Halper contends that UIW represented it would follow its tenure procedures before his employment commenced; therefore, the at-will defense is not applicable even assuming Halper was an at-will employee.

■ A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47–48 (Tex.1998). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Id.*

■ Halper contends that UIW misrepresented that it would follow the tenure procedures in the Faculty Handbook. As noted in regard to Halper's breach of contract claim, the evidence conclusively established that UIW followed its tenure procedures. Therefore, the representation by UIW was not false, and summary judgment was properly granted as to Halper's fraud/misrepresentation claim.

### CONCLUSION

The trial court's judgment is affirmed.