# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0626
═══════════

GARY SAWYER, DOUG KEMPF, PETER BARNABA, SR.,
GEOFF RORREV, TIM GREGORY, ET AL., APPELLANTS,

v.

E. I. DU PONT DE NEMOURS AND COMPANY, APPELLEE

═══════════════════════════════════════════════
ON CERTIFIED QUESTIONS FROM THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
═══════════════════════════════════════════════

**Argued February 26, 2013**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Two questions certified to us by the United States Court of Appeals for the Fifth Circuit ask whether, under Texas law, at-will employees and employees subject to a collective bargaining agreement can sue their corporate employer for fraudulently inducing them to move to a wholly owned subsidiary.[1]  We conclude that while an employee can sue an employer for fraud in some situations, in the context in which the certified questions arise, the answer to both is no.

---

[1] 689 F.3d 463 (5th Cir. 2012) (per curiam); *see* TEX. CONST. art. V, § 3-c(a) ("The supreme court and the court of criminal appeals have jurisdiction to answer questions of state law certified from a federal appellate court.").

I

The factual background, which we take from the Fifth Circuit's opinion, may be summarized as follows.[2]

In February 2002, E. I. du Pont de Nemours and Company announced plans to spin off part of its operations, including its Terathane Products Unit in La Porte, into a wholly owned subsidiary, DuPont Textiles and Interiors ("DTI"). Most of the Unit employees were covered by a collective bargaining agreement ("CBA"), which gave them the right to transfer to other DuPont jobs rather than move to the new DTI subsidiary. DTI's employees were to be covered by an identical CBA and would continue to receive the same pay and benefits they had at DuPont. But the Unit employees, who had worked for DuPont many years, were afraid DuPont would sell DTI, and that such a sale would adversely affect their compensation and retirement packages. DuPont wanted the Unit employees to go to DTI to avoid significant training expenses — both for transferring employees in their new DuPont jobs and for their DTI replacements — and layoffs of people displaced by more senior transferring employees.

DuPont and the union[3] agreed that the Unit employees would be given a deadline to decide whether to move to DTI, and the fate of those who decided to stay would be subject to further bargaining. DuPont allegedly assured the Unit employees, to persuade them to move to DTI, that DuPont would keep DTI, even though, unbeknownst to the employees, DuPont had already discussed selling DTI with a potential buyer, Koch Industries. Effective February 1, 2003, almost all of the Unit employees moved to DTI. A few weeks later, on April 14, DuPont announced it was

---

[2] The Fifth Circuit's opinion sets out the facts in more detail. 689 F.3d at 464-467.

[3] The employees' union at the time was Local 900C, International Chemical Workers Union Council, AFL-CIO.

3

negotiating a sale of DTI to Koch. The sale was finalized on May 1, 2004. Koch subsequently

reduced the former DuPont employees' compensation and retirement benefits.

In November 2006, 63 of the former DuPont employees ("the Employees") sued DuPont for

fraudulently inducing them to terminate their employment and accept employment with DTI by

misrepresenting that DTI would not be sold.[4] The Employees claim over $23 million in damages.

DuPont contends that the Employees were all at will and therefore cannot sue for fraud. The 59

Employees covered by DuPont's CBA argue that they were not at will because the CBA prohibited

discharge except for "just cause". DuPont responds, in part, that because the CBA could be

terminated on 60 days' notice, the CBA's requirement of "just cause" for discharge did not modify

the at-will status of covered employees.

The Fifth Circuit asks:

1.    Under Texas law, may at-will employees bring fraud claims against their
      employers for loss of their employment?

2.    If the above question is answered in the negative, may employees covered
      under a 60-day cancellation-upon-notice collective bargaining agreement that
      limits the employer's ability to discharge its employees only for just cause,
      bring Texas fraud claims against their employer based on allegations that the
      employer fraudulently induced them to terminate their employment?[5]

As usual, the Circuit has "disclaim[ed] any intention or desire that the Supreme Court of Texas

---

[4] The Employees did not allege any violation of either DuPont's or DTI's CBA. In an earlier appeal, the Fifth Circuit held that the Employees' fraud claims are not preempted by either the National Labor Relations Act or the Employee Retirement Income Security Act. *E.I. du Pont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 797, 800 (5th Cir. 2008).

[5] 689 F.3d at 470.

4

confine its reply to the precise form or scope of the questions certified."[6]

## II

We begin with the first question.

"For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."[7] The Legislature has created a few narrow exceptions, prohibiting, for example, discharge based on certain forms of discrimination[8] or in retaliation for engaging in certain protected conduct.[9] But Texas courts have created only one: prohibiting an employee from being discharged for refusing to perform an illegal act.[10] Otherwise, "[t]he courts of Texas have steadfastly refused to vary from [the general rule]."[11]

Thus, we have repeatedly refused to recognize common-law whistleblower liability.[12] We

---

[6] *Id.*

[7] *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (citing, *e.g.*, *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888) (noting the general rule)). *See also* RESTATEMENT (THIRD) OF EMPLOYMENT LAW § 2.01 cmt. a (Tentative Draft No. 1, 2008) ("The courts in 49 states recognize the principle that the employment is presumptively an at-will relationship.").

[8] TEX. LAB. CODE § 21.051.

[9] *E.g.* TEX. GOV'T CODE § 437.204 (serving in the state military forces); TEX. LAB. CODE §§ 21.055 (opposing a discriminatory practice; filing a charge or complaint; or participating in an investigation, proceeding, or hearing), 101.052-.053 (being a member or nonmember of a union), 451.001 (filing a workers' compensation claim); TEX. CIV. PRAC. & REM. CODE § 122.001 (performing jury service); TEX. FAM. CODE § 158.209 (being subject to an order or writ of withholding from wages for child support).

[10] *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

[11] *Id.* at 734.

[12] *Winters v. Houston Chronicle Pub'g. Co.,* 795 S.W.2d 723, 724-725 (Tex. 1990); *Austin v. HealthTrust, Inc.–The Hosp. Co.*, 967 S.W.2d 400, 403 (Tex. 1998); *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332-333 (Tex. 2006) (per curiam).

have refused to impose on employers a duty to exercise ordinary care in investigating employee misconduct because such a duty "would significantly damage the at-will employment relationship that Texas has so carefully guarded."[13] And we have refused to impose a duty of good faith and fair dealing on employers, noting that it would "completely alter the nature of the at-will employment relationship".[14]

We have not determined whether an at-will employee can sue his employer for fraud,[15] but the courts of appeals have dealt with the issue and have almost all held that a fraud claim cannot be based on illusory promises of continued at-will employment.[16] So uniform is Texas caselaw that the Employees in their brief "concede that it is unlikely that Texas law permits at-will employees to assert fraud claims against their employers if the claims relate to continued future employment."[17]

---

[13] *Texas Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 609 (Tex. 2002).

[14] *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000).

[15] The International Chemical Workers Union Council of the United Food & Commercial Workers (ICWUC/UFCW), a union with which the Employees' union is affiliated, argues as amicus in support of the Employees that the Court allowed an at-will employee to sue for fraud in *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986). Brief of ICWUC/UFCW in Support of Appellants at 3. But the parties in that case did not argue whether a fraud action was allowed; the issue was whether there was "evidence to support the jury's finding that the employer did not intend to implement a bonus plan at the time he promised to do so." *Spoljaric*, 708 S.W.2d at 433. The Court did not consider the broader question whether an action for fraud was allowed.

[16] *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 612-613 (Tex. App.–Houston [14th Dist.] 2011, no pet.); *Cahak v. Rehab Care Grp., Inc.*, No. 10-06-00399-CV, 2008 Tex. App. LEXIS 6011, at *7, 2008 WL 3112083, at *3 (Tex. App.–Waco, Aug. 6, 2008, no pet.) (mem. op.); *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 381 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 379-380 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 961 (Tex. App.–Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 937 (Tex. App.–Houston [14th Dist.] 1994, no writ); *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 925 (Tex. App.–Houston [1st Dist.] 1993, no writ); *Molder v. Sw. Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex. App.–Houston [1st Dist.] 1983, writ ref'd n.r.e.); *contrast Roberts v. Geosource Drilling Servs., Inc.*, 757 S.W.2d 48, 50 (Tex. App.–Houston [1st Dist.] 1988, no writ) ("[i]t is no answer that the parties' written contract was for an employment-at-will, where the employer foreseeably and intentionally induces the prospective employee to materially change his position to his expense and detriment").

[17] Appellants' Brief at 18.

This does not mean that at-will employees can never sue for fraud. Recovery of expenses incurred in reliance on a fraudulent promise of prospective employment has been allowed because neither the injury nor the recovery depends on continued employment.[18] The distinction is similar to one we have drawn in determining whether an at-will employee's contract with his employer is valid. "At-will employment does not preclude employers and employees from forming subsequent contracts, 'so long as neither party relies on continued employment as consideration for the contract.'"[19] An employer and employee may agree, for example, to arbitrate their disputes,[20] or for reasonable restrictions on post-discharge competition,[21] as long as other consideration is given. But if the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable agreement.[22]

Such an illusory promise can no more support an action for fraud than one for breach of

---

[18] *See Halper v. Univ. of the Incarnate Word*, 90 S.W.3d 842, 847 (Tex. App.–San Antonio 2002, no pet.) (even assuming employment was at will, an "at-will" defense was unavailable because the employee's fraud claim was based on a representation made before his employment began); *Offshore Petroleum Divers, Inc. v. Cromp*, 952 S.W.2d 954 (Tex. App.–Beaumont 1997, pet. denied). The *Offshore Petroleum* court stated that "the cause of action for fraud, which encompasses misrepresentations made before employment, *as well as those made during employment*, is not barred by the employment at will doctrine." *Id.* at 956 (emphasis added). The Fifth Circuit read the emphasized language as authority for an at-will employee's fraud action based on continued employment, 689 F.3d at 468, but *Offshore Petroleum* does not indicate that any recovery sought in that case was dependent on continued at-will employment.

[19] *In re 24R, Inc.*, 324 S.W.3d 564, 566-567 (Tex. 2010) (per curiam) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003)).

[20] *Id.*

[21] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009).

[22] *Id.*

contract. To recover for fraud, one must prove justifiable reliance on a material misrepresentation.[23]

A representation dependent on continued at-will employment cannot be material because

employment can terminate at any time. Nor can one justifiably rely on the continuation of

employment that can be terminated at will.[24] "I will if I want to" is not fraud. And no one can claim

---

[23] *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

[24] Section 6.05 of Tentative Draft No. 4 of the *Restatement (Third) of Employment Law* (2011) appears to support our position. The black-letter rule states:

> An employer may be subject to liability for intentionally inducing an employee or prospective employee, through knowingly false representation of fact, current intention, opinion, or law (1) to enter into, to maintain, or to leave an employment relationship with the employer, or (2) to refrain from entering into or maintaining an employment relationship with another employer.

But comment *e* adds:

> Where employees induced to resign are in at-will employment relationship and would have no cause of action had they been discharged, however, it can be presumed, in the absence of special proof, that the employees would have been discharged had they not been induced to resign. In such cases, no remedy is appropriate, beyond the possible allowance of a claim for unemployment compensation for constructive discharge.

Comment *f* notes that damages unrelated to continued employment may nevertheless be recoverable:

> An employer who is liable to an employee for an inducement through fraudulent misrepresentation is liable for pecuniary losses incurred by the employee in reliance on the misrepresentation, but not for fulfilling any promise contained in the misrepresentation. Thus, an employer is liable for the loss of opportunities or benefits that it fraudulently induces an employee to sacrifice, but not for fulfilling the fraudulent promises used to induce that sacrifice.

The accompanying illustration explains that a person fraudulently induced to leave her job in New York and move to California for a "long and lucrative career" that never materializes may recover "the costs of moving her family across the country and for other loss occasioned by her relinquishing her former position" but not "the value of the promised 'long and lucrative career'". *Id.* illus. 10.

Section 6.05 was approved by the membership of the American Law Institute at the 2011 Annual Meeting, subject to the discussion at the Meeting and to editorial prerogative. Proceedings at 88th Annual Meeting: American Law Institute, 88 A.L.I. Proc. 193-196 (2011). According to the Institute: "Once it is approved by the membership at an Annual Meeting, a Tentative Draft or a Proposed Final Draft represents the most current statement of the American Law Institute's position on the subject and may be cited in opinions or briefs . . . until the official text is published." American Law Institute, "Overview, Project Development", *available at* http://www.ali.org/index.cfm?fuseaction= projects.main (last visited April 16, 2014). We do not adopt section 6.05 as a correct statement of Texas law but cite it as consistent with our analysis.

recovery of damages for the loss of an employment relationship he had no right to continue.

To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract, making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule. An employee who could not show consideration for an enforceable contract could simply sue for fraud and recover not only the same actual damages but punitive damages as well.

As previously stated, "[a]t-will employment is an important and long-standing doctrine in Texas, and we have been reluctant to impose new common-law duties that would alter or conflict with the at-will relationship."[25] Although common-law fraud is certainly not new, allowing it to be asserted to alter or conflict with at-will employment would be. For all these reasons, we answer the Fifth Circuit's first question:[26] an at-will employee cannot bring an action for fraud that is dependent on continued employment.[27]

---

[25] *Texas Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608, 609 (Tex. 2002) (internal citations omitted) (refusing to impose on employers a duty to exercise ordinary care in investigating employee misconduct because doing so "would significantly damage the at-will employment relationship that Texas has so carefully guarded"); *see also City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (refusing to impose on employers a duty of good faith and fair dealing because doing so would "completely alter the nature of the at-will employment relationship").

[26] The question asks whether fraud can be claimed "for loss of . . . employment." 689 F.3d at 470. We have not answered the question directly because that phrase may cause a simple "no" to be misconstrued. Our answer must be understood in light of the rationales we offer for it.

[27] Amicus ICWUC/UFCW argues that whether the Employees were at will is irrelevant because they suffered a "greater risk [of] loss of secure employment benefits than they otherwise would have risked but for [DuPont's] deceitful activity". Brief of ICWUC/UFCW in Support of Appellants at 3. In other words, there was a better chance that, had the Employees stayed at DuPont, they would not have been discharged and would have ultimately received more benefits than by moving to DTI and not being discharged there, so that the moment they chose to move in reliance on DuPont's false assurances that DTI would not be sold, they were damaged. We think such a claim would be too speculative, but regardless, it is not the claim the Employees make. They allege that as it has turned out, they have actually suffered $23 million in damages, damages dependent on continued employment. Amicus also argues that DuPont did not want to discharge the employees, but in determining whether an at-will employee can sue for fraud, the important consideration is the employer's rights, not what might or might not be its motives.

9

**III**

We turn now to the second question.

**A**

As noted above, 59 of the Employees contend that they were not at-will employees at DuPont because their CBA provided "that no employee will be discharged . . . except for just cause." DuPont argues that they remained at will because the CBA could be terminated for any reason on 60 days' notice. DuPont cites cases indicating that an agreement restricting discharge that is itself terminable at will does not alter at-will employment.[28] But DuPont's termination of its CBA would not have been without significant consequences. DuPont would have been required immediately to engage in new bargaining with the union, and it worried that its labor relations would be adversely affected beyond the matter of employees transferring to DTI, even to the point of a strike. Moreover, DuPont does not suggest that a new CBA would have excluded the same just-cause-for-discharge provision. Terminating the CBA might not have avoided that requirement.

But even if DuPont could have avoided the "just cause" requirement by terminating the CBA, it did not. As the Fifth Circuit concluded, "[w]hile DuPont could have begun the termination process at anytime by providing 60 days' written notice, it never did so, and therefore was unable to discharge the covered appellants except for just cause when they transferred to DTI."[29] Thus, we

---

[28] *See Hussong v. Schwan's Sales Enters., Inc.,* 896 S.W.2d 320, 322 (Tex. App.–Houston [1st Dist.] 1995, no writ); *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 117-118 (Tex. App.–Houston [14th Dist.] 1999, no pet.); *see also McGee v. Abrams Tech. Servs., Inc.,* No. 01–06–00590–CV, 2008 Tex. App. LEXIS 1616, at *9, 2008 WL 597192, at *4, (Tex. App.–Houston [1st Dist.] Mar. 6, 2008, no pet.); *C.S.C.S., Inc. v. Carter,* 129 S.W.3d 584, 591 (Tex. App.–Dallas 2003, no pet.).

[29] 689 F.3d at 470.

need not consider whether a terminable-at-will-with-advance-notice agreement modifies terminable-at-will employment. Rather, we must determine whether the CBA's "just cause" provision, which was never in fact terminated, modified the Employees' at-will status.

**B**

An employer and employee may modify their at-will relationship by agreement, but lest the general at-will rule be eroded, we have insisted that the parties be definite in expressing their intent.

> For such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be discharged only for "good reason" or "good cause" when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him. An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances.[30]

DuPont argues that "just cause" is not defined in the CBA or elsewhere and therefore that the "just cause" provision did not alter the employment relationship.

But "just cause" in the CBA is not the kind of amorphous assurance to which we referred. The CBA treats the concept as assertable, determinable, and consequential.

> An employee, who believes he has been unjustly discharged, shall be allowed ten (10) calendar days, from the date of notification of discharge, in which to register a complaint with [DuPont]. A complaint alleging an unjust discharge may be processed under Article VI, Adjustment of Grievances, beginning with the third step; or under Article VII, Arbitration; or both. If it is agreed or determined that an employee has been unjustly discharged, [DuPont] will reinstate without loss of seniority and compensate such employee for lost earnings at his regular rate of pay based on his regular work schedule in effect prior to the discharge, provided, however, such period of payment shall not exceed six (6) months.

---

[30] *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

The CBA provides that at the "third step" of the grievance procedure, a grievance shall be considered by a DuPont committee and a union committee, decided within 40 days of the "third step" meeting, and — for all written grievances — answered in writing. If a grievance is arbitrated instead, the CBA requires the parties to agree on "the issue to be arbitrated" or, failing that, to submit written statements setting out the question for arbitration and other matters involved. The arbitration decision is final and binding on DuPont, the union, and the employee.

The last point is most important: the parties agreed in the CBA that the requirement that discharge be only for "just cause" can be given the force of law among all those affected. Under either procedure, or both, if "it is agreed or determined that an employee has been unjustly discharged," the CBA provides that DuPont "will reinstate" the employee. The CBA thus modified the Employees' at-will employment relationship.

## C

The question remains whether the Employees, subject to a CBA that allowed discharge only for just cause, can sue for having been fraudulently induced to transfer to DTI by DuPont's statements that it would not sell DTI, resulting in a change in their benefits. The Employees argue that we answered this question in *Johnson & Johnson Medical, Inc. v. Sanchez*.[31] There, Sanchez, an employee covered by a CBA, alleged that her employer promised to call her back to work after an on-the-job injury but never did.[32] We held that Sanchez could not recover for fraud because she "did not present any evidence that she relied to her detriment on any representation made by Johnson

---

[31] 924 S.W.2d 925 (Tex. 1996).

[32] *Id.* at 927.

12

& Johnson, such as turning down other offers of employment. Indeed, Sanchez obtained other employment during the period in question."[33] The Employees argue that we recognized that an employee like Sanchez can sue for fraud with supporting evidence.

The Employees over-read *Johnson & Johnson*. The parties there did not argue, and we did not consider, the general availability of a fraud action to an employee covered by a CBA. Our analysis was limited to an assessment of the evidence in that case. Importantly, we did not consider the terms of the CBA, whether it modified Sanchez's at-will employment, and whether her complaints invoked any contractual remedy. Those considerations in the present case are crucial.

DuPont argues that the Employees' complaint that they were fraudulently induced to terminate their employment with DuPont is one for constructive discharge; that such constructive discharge would have been without just cause; that the Employees agreed in the CBA to the remedies for discharge without just cause, namely, reinstatement and up to six months' lost wages; and that their agreement forecloses an action for fraud. We agree. The Employees object that they were not discharged, indeed, that DuPont wanted them to stay at their jobs. But DuPont wanted them to leave its employ and move to DTI, a separate entity, which as the Employees feared, could be, and was, sold. Their employment at DuPont terminated. And if that termination was fraudulently induced, it was tantamount to discharge, which DuPont concedes would have been without just cause.

---

[33] *Id.* at 930.

In *City of Midland v. O'Bryant*, we refused to impose on employers a common-law duty of good faith and fair dealing.[34] For employees not at will but under contract, we reasoned that "such a duty would be unnecessary when there are express contractual limits on an employer's right to terminate."[35] To allow a fraud action when the Employees had a contractual remedy would not only be unnecessary, it would defeat the parties' bargain. An employee discharged for refusing to go to DTI would clearly have been limited to his remedies under the CBA. To allow an employee fooled into going to DTI to recover for fraud would defeat the CBA. The Employees argue that it would contravene public policy to allow an employer to benefit from its duplicity, but public policy is not better served by allowing contracting parties to circumvent their agreement. In this case, both DuPont and the Employees must be held to the CBA.[36]

---

[34] 18 S.W.3d 209, 216 (Tex. 2000).

[35] *Id.*

[36] We are unable to discern the position of Tentative Draft No. 4 of the *Restatement (Third) of Employment Law* (2011) on this matter. Comment *e* to Section 6.05 states:

> An employer's fraudulent inducement of an employee to leave an employment relationship with the employer may be tortious, even though the employer would have been subject to no more than a contract action had it discharged the employee directly. An employer may want to induce an employee to resign, rather than to discharge her, because the employee may be protected from discharge by her employment contract or by external law. By inducing a resignation the employer may attempt to minimize the chances that the employee will assert any legal right against the employer. A fraudulently induced resignation may be treated as a constructive discharge subject to challenge under any right of the employee against wrongful discharge, but a fraudulently induced resignation may prevent the former employee from learning that she may have a right of action to challenge a discharge. A fraudulent inducement of a resignation thus may be tantamount to the fraudulent inducement of a waiver of a right of action. The remedy for the fraudulent inducement of a resignation therefore may include not only the revival of any independent cause of action for constructive discharge, but also appropriate tort remedies for any pecuniary loss from the delay in commencing the action.

The comment seems to say that a fraudulently induced termination may be treated either as a tort or as constructive discharge in violation of contractual rights. To the extent the comment indicates that an employee who has agreed to remedies for discharge without just cause can avoid that agreement by suing for fraud, we disagree.

14

The Employees argue that we should look to federal labor policies in deciding whether they can sue for fraud, but that is not our place.  The Fifth Circuit has asked only for our interpretation of Texas law.  DuPont's CBA required that "[a]n employee, who believes he has been unjustly discharged, shall be allowed ten (10) calendar days, from the date of notification of discharge, in which to register a complaint".  The requirement would be excused by any fraud by DuPont, but only for a reasonable time after it became apparent that DTI would be sold.  Whether the Employees' rights under the CBA have been lost is a matter we leave for the Fifth Circuit.

We agree with the Employees that we should not answer the Fifth Circuit's second question broadly.  Our answer is: in the situation presented, no.

Nathan L. Hecht
Chief Justice

Opinion issued: April 25, 2014

15