# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 11-40454

June 11, 2014

Lyle W. Cayce
Clerk

GARY SAWYER; DOUG KEMPF; PETER BARNABA, SR.; GEOFF
RORREV; TIM GREGORY; ET AL,

        Plaintiffs - Appellants

v.

E I DUPONT DE NEMOURS & COMPANY,

        Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:

Sixty-three former employees (collectively "appellants") of E.I. DuPont de Nemours and Company's ("DuPont") La Porte, Texas manufacturing facility sued DuPont, alleging that the company fraudulently induced them to terminate their employment with DuPont and accept employment with a wholly-owned subsidiary. The district court granted summary judgment in favor of DuPont. For the following reasons, we AFFIRM.

No. 11-40454

I.

Appellants were hourly-wage employees in the Terathane Products Unit of DuPont's LaPorte facility.[1] Fifty-nine of them ("covered employees") were covered by a collective bargaining agreement ("CBA") between the Local 900C of the International Chemical Workers Union Counsel, AFL-CIO ("the Union") and DuPont's LaPorte facility.

In February 2002, DuPont announced its intention to spin off a segment of its operation (including appellants' unit) into a wholly-owned subsidiary, DuPont Textiles and Interiors, Inc. ("DTI"). DuPont and the Union reached an agreement wherein the employees could choose between staying with DuPont but transferring to a different unit of the LaPorte facility, or remaining with their unit and becoming DTI employees. Appellants allege that, at various meetings, DuPont worked hard to persuade them to transfer with their unit and become DTI employees. According to them, DuPont represented that DTI would remain a part of DuPont and not be sold to a third party. They allege that DuPont also represented that their pension, pay, and benefits would remain the same. But months after their elections to move with the Terathane Unit to DTI became final, DuPont announced that it was negotiating the sale of DTI. On May 1, 2004, DuPont sold DTI to Koch Industries, after which appellants claim their pensions, pay, and benefits materially changed for the worse.

II.

On November 7, 2006, appellants sued DuPont in federal district court, bringing state-law claims of fraud, fraudulent inducement, and fraud by omission. After dismissing two claims on the basis of the statute of limitations,

---

[1] Our prior opinions contain more thorough recitations of the facts. *Sawyer v. E I DuPont De Nemours & Co.* ("*Sawyer II*"), 689 F.3d 463 (2012); *Sawyer v. E.I. DuPont de Nemours & Co.* ("*Sawyer I*"), 678 F.3d 379 (2012).

No. 11-40454

the district court granted summary judgment in favor of DuPont, holding that appellants were at-will employees and thus could not bring fraud claims under Texas law. Appellants asked this court to reverse the district court's grant of summary judgment.

On April 20, 2012, we issued an opinion affirming the district court's grant of summary judgment in favor of DuPont. Because Sawyer's claims are in federal court based on diversity jurisdiction, we made an "*Erie* guess" as to how the Supreme Court of Texas would rule on the issues of Texas law.[2] We held that both the covered and non-covered employees were at-will employees, and that under Texas law at-will employees could not sue their employers for fraud based on the loss of their employment. *Sawyer I*, 678 F.3d at 385, 387.

On July 27, 2012, we withdrew our opinion in *Sawyer I* and certified the following questions to the Supreme Court of Texas:

> 1. Under Texas law, may at-will employees bring fraud claims against their employers for loss of their employment?
>
> 2. If the above question is answered in the negative, may employees covered under a 60-day cancellation-upon-notice collective bargaining agreement that limits the employer's ability to discharge its employees only for just cause, bring Texas fraud claims against their employer based on allegations that the employer fraudulently induced them to terminate their employment?

*Sawyer II*, 689 F.3d at 470.

The Texas Supreme Court answered our certified questions in an opinion issued on April 25, 2014. It answered our first question in the negative. In

---

[2] "Where, as here, the proper resolution of the case turns on the interpretation of Texas law, we are bound to apply Texas law as interpreted by the state's highest court." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (internal quotation marks and alteration omitted). "[W]e must make an '*Erie* guess' as to how the Texas Supreme Court would rule" based on, *inter alia*, Texas Supreme Court decisions in analogous cases, its analysis on related issues, and lower state court decisions. *Id.*

relevant part, the court stated: "To recover for fraud, one must prove justifiable reliance on a material misrepresentation. A representation dependent on continued at-will employment cannot be material because employment can terminate at any time. Nor can one justifiably rely on the continuation of employment that can be terminated at will." *Sawyer v. E. I. du Pont de Nemours & Co.*, No. 12-0626, 2014 WL 1661492, at *3 (Tex. Apr. 25, 2014) (footnotes omitted). It continued: "To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract, making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule." *Id*.

The Texas Supreme Court answered our second question in the negative as well. The court explained that "[t]he CBA . . . modified the Employees' at-will employment relationship." *Id*. at *4. But, treating appellants' allegations that they were fraudulently induced into terminating their employment as allegations of constructive discharge without just cause, the court held that appellants' remedies were limited to those contained in the CBA itself. *Id*. at *5.[3] It reasoned:

> To allow a fraud action when Employees had a contractual remedy would not only be unnecessary, it would defeat the parties' bargain. An employee discharged for refusing to go to DTI would clearly have been limited to his remedies under the CBA. To allow an employee fooled into going to DTI to recover for fraud would defeat the CBA.

*Id*.

---

[3] The CBA established procedures wherein a grievance for an "unjust discharge" would be considered by DuPont and Union Committees. It also established procedures for when grievances are instead arbitrated.

No. 11-40454

### III.

The Texas Supreme Court's answers to our certified questions dictate the disposition of this appeal. The non-covered employees are at-will employees who, under Texas law, may not bring fraud claims for the termination of their employment. And while the CBA altered the covered employees' at-will status, they too cannot bring fraud actions because their remedies are limited to those provided in the CBA. As such, we AFFIRM the district court's grant of summary judgment in favor of DuPont.[4]

---

[4] The Texas Supreme Court left for us to decide "[w]hether the Employees' rights under the CBA have been lost." *Id*. at *6. But, as we have previously noted, "Appellants' claims [are] not based on any alleged violation of the CBA between the Union and DuPont or the CBA between the Union and DTI," and the Union is not party to this litigation. *Sawyer II*, 689 F.3d at 466 & n.3.

5