COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



FRED LOYA INSURANCE AGENCY,  §
INC., AND LOYA INSURANCE                              No. 08-12-00281-CV
COMPANY,                                  §

                                          §          Appeal from the

              Appellants/Cross-Appellees, §          County Court at Law Number Six

v.                                        §          of El Paso County, Texas

                                          §

MARTIN W. COHEN, MARTIN W.                           (TC# 2009-873)
COHEN & CO., AND NEHOC                     §
ADVISORS, INC.,

              Appellees/Cross-Appellants.

## **O P I N I O N**

This is a double appeal arising from the trial court's rulings on competing motions for summary judgment. Fred Loya Insurance Agency, Inc. (the Agency), and Loya Insurance Company (the Company)(collectively Loya) challenge the summary judgment granted in favor of Martin W. Cohen (Martin), Martin W. Cohen & Company (Cohen & Company), and Nehoc Advisors, Inc. (Nehoc), (collectively, "Cohen") on Loya's breach of fiduciary duty claim and the award of attorney's fees. In its cross-appeal, Cohen complains of orders striking its summary judgment affidavit, granting Loya's traditional and no-evidence summary judgment motions, and denying Cohen's motion to reconsider the traditional summary judgment motion, and final

judgment.[1]   For the reasons that follow, we affirm.

## FACTUAL SUMMARY

In July 2001, Loya executed a written contract engaging the professional accounting services of Cohen to assist in acquiring financing that would permit Loya to operate its business without need of obtaining reinsurance for the insurance policies it was selling and to represent Loya in matters before the Texas Department of Insurance as they related to alterations in Loya's method of conducting its business.   Cohen also registered as a lobbyist for Loya.   Loya agreed to compensate Cohen on an hourly-rate basis.

On August 7, 2002, the parties entered into a verbal agreement whereby Loya would compensate Cohen 1% of the written premium revenue reinsured, (the 1% Agreement), payable monthly.   According to Loya, Cohen was to assist in obtaining financing sufficient to allow Loya to reinsure insurance premiums on policies produced by the Agency, and to continue to provide accounting services.   Cohen would submit monthly invoices amounting to 1% of the written premium revenues of the preceding month, and all other accounting services through Cohen's CPA firm would be billed on varying hourly rates.

By letter dated February 20, 2009, Loya provided written notice to Cohen that it was terminating their agreement and relationship effective December 31, 2008.   Loya filed suit seeking a declaratory judgment that because the 1% Agreement had an indefinite term, Loya was entitled to terminate the agreement at any time upon notice to Cohen, and that the agreement was effectively terminated on February 20, 2009.   Loya alternatively sought a declaratory judgment

---

[1] Cohen's notice of cross-appeal specifically states that it is appealing from the trial court's: (1) Order on Plaintiff's Motions for Partial Summary Judgment signed on May 26, 2011; (2) Order on Plaintiffs' Objection to Defendants' Summary Judgment Proof signed on May 19, 2011; (3) Order Denying Motion to Reconsider signed on November 3, 2011; (4) Order Granting Plaintiffs' September 6, 2011 Motion for Partial Summary Judgment signed on January 24, 2012; and (5) Final Judgment signed on August 21, 2012.

2

that a reasonable period of time had elapsed "for the duration of the 1% Agreement" prior to December 31, 2008, and Loya was entitled to terminate that agreement effective February 20, 2009. Loya's amended petition alleged a breach of fiduciary duty cause of action alleging that Martin, in his capacity as a certified public accountant and agent of Loya, breached his duties to Loya. Cohen counter-claimed for breach of contract and fraud, and alternatively presented a claim for quantum meruit, which it later declined to pursue.

On March 18, 2011, Loya filed its motion for partial summary judgment on its declaratory action. Loya also sought a defensive partial summary judgment dismissing Cohen's alternative quantum meruit claim. In its order on Loya's motions for partial summary judgment, the trial court recalled that Cohen had stipulated that it was withdrawing with prejudice its claim for relief on the theory of quantum meruit. It granted summary judgment in favor of Loya, declaring that the oral 1% Agreement was terminable by either party upon notice to the other without any further obligations, Loya properly terminated the 1% agreement by letter dated February 20, 2009, termination of the 1% Agreement was effective on that date, and Loya had no further liability to Cohen after that date. The trial court dismissed Cohen's counterclaim alleging breach of contract for the period following February 20, 2009, but did not dismiss that claim for the period through February 20, 2009.

On June 10, 2011, Cohen filed its motion for partial summary judgment asserting that no evidence supported Loya's breach of fiduciary duty cause of action and that Loya, having obtained summary judgment that the 1% Agreement was terminable at will, should not be permitted to seek recovery based upon that agreement not being terminable at will. The trial court granted Cohen's motion and ordered that Loya take nothing on its breach of fiduciary duty claim.

3

On September 6, 2011, Loya filed its no-evidence motion for summary judgment with regard to Cohen's claim of fraudulent inducement. The trial court granted Loya's motion.

On December 15, 2011, Cohen filed its motion for partial summary judgment asserting that there was no genuine issue of any material fact concerning the elements of its breach of contract claim. On January 24, 2012, the trial court entered an agreed order granting the motion in part and denying it in part. The court awarded Cohen $537,779.20 as compensation under the 1% Agreement for the period of January 1, 2009, through February 20, 2009, with pre-judgment interest from June 5, 2009, through entry of final judgment, subject to its final determination by separate order of the merits of Loya's claims that Cohen breached its fiduciary duties. The trial court also ordered that Cohen recover post-judgment interest after entry of final judgment and reasonable attorneys' fees necessary to recover and collect the full amount of Cohen's contract claims, leaving for further resolution Loya's costs, including reasonable and necessary attorneys' fees, under the declaratory judgment statute.

In its final judgment, pursuant to its prior summary judgment rulings, the trial court declared that Loya properly terminated its oral agreement with Cohen on February 20, 2009, and had no further liability to Cohen under the 1% Agreement after that date. It ordered that (1) Cohen take nothing on its breach of contract claims against the Agency for any fees under the 1% Agreement allegedly owed after February 20, 2009; (2) the Agency and Company take nothing on their breach of fiduciary duty claims and defenses; (3) Cohen take nothing by reason of its fraudulent inducement counterclaims; (4) Cohen recover from the Agency the principal sum of $537,779.20 as compensation pursuant to the 1% Agreement for the period of January 1, 2009, through February 20, 2009; and (5) Cohen recover from the Agency pre-judgment and

post-judgment interest and its reasonable and necessary attorney's fees.

The trial court awarded Loya attorneys' fees in the amounts of $211,030 for the work performed by The Cook Law Firm, and $37,185 for the work performed by Mounce, Green, Myers, Safi, Paxson & Galatzen P.C. in the successful declaratory judgment claim. It awarded Cohen attorneys' fees in the sums of $300,696 for services performed by Beck & Hall and $15,000 for services performed by David Evans. The court denied recovery for attorneys' fees incurred by Richard Forrest and Enrique Moreno. The trial court also awarded attorneys' fees to the parties in the event of appeal.

## STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the summary judgment evidence presented to the trial court. *See* TEX. R. CIV. P. 166a(c)(no oral testimony may be considered in support of a motion for summary judgment); *Chappell v. Allen*, 414 S.W.3d 316, 321 (Tex.App.—El Paso 2013, no pet.)(scope of review limited to summary judgment record upon which trial court's ruling was based); *Garcia v. BNSF Ry. Co.,* 387 S.W.3d 763, 766 (Tex.App. –El Paso 2012, no pet.); *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex.App. –Houston [14th Dist.] 2007, no pet.). When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013); *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency,* 390 S.W.3d 289, 292 (Tex. 2013).

When a party moves for summary judgment on both no-evidence and traditional grounds,

5

we first review the trial court's judgment under the no-evidence standard of review.  *Merriman*, 407 S.W.3d at 248; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  "That is because if the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."  *Merriman,* 407 S.W.3d at 248.

We review no-evidence summary judgments under the same legal sufficiency standard as directed verdicts.  *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750-51 (Tex. 2003).  Under that standard, we consider evidence in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not.  *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005).  The non-movant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of its cause of action.  TEX. R. CIV. P. 166a(i).  A no-evidence challenge will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact.  *Merriman,* 407 S.W.3d at 248 (citations omitted).  When a nonmovant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.  TEX. R.

6

CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The burden of proof is on the movant and we resolve all doubts about the existence of a genuine issue of material fact against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Bell,* 205 S.W.3d at 712. In determining whether the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A moving party who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010).

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have. *Merriman,* 407 S.W.3d at 248; *Fielding,* 289 S.W.3d at 848. If any of the summary judgment grounds are meritorious, we must affirm the summary judgment. *Texas Workers' Compensation Com'n v. Patient Advocates of Texas,* 136 S.W.3d 643, 648 (Tex. 2004).

### LOYA'S APPEAL

We address each appeal in sequence. Loya presents two issues for our consideration.

### Breach of Fiduciary Duty

In Issue One, Loya argues the trial court erred in dismissing its claim for breach of fiduciary duty because it presented sufficient evidence on each element of that cause of action to overcome Cohen's no-evidence motion for summary judgment. Loya also complains that Cohen

7

was not entitled to traditional summary judgment on its breach of fiduciary claim.

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Dernick Res., Inc. v. Wilstein,* 312 S.W.3d 864, 877 (Tex.App. –Houston [1st Dist.] 2009, no pet.), *citing Jones v. Blume,* 196 S.W.3d 440, 447 (Tex.App. –Dallas 2006, pet. denied). A fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Vogt v. Warnock*, 107 S.W.3d 778, 782 (Tex.App. –El Paso 2003, pet. denied).

As to the first element, Loya asserts a fiduciary relationship exists because Cohen was Loya's agent. Cohen counters that there is no evidence to show that Loya had the requisite right to control Cohen's actions as would demonstrate that a principal-agent relationship existed. We agree.

As this Court has long observed, "A question of agency is generally one of fact, and one may be an independent contractor under some circumstances yet may be an agent or employee in connection with other work or activities." *Lyons v. Lindsey Morden Claims Mgmt., Inc.,* 985 S.W.2d 86, 90 (Tex.App. –El Paso 1998, no pet.). The United States Supreme Court has stated that "[a]gency requires more than mere authorization to assert a particular interest," and has observed that comment *f* to Section 1.01 of the Third Restatement of Agency provides that "[a]n essential element of agency is the principal's right to control the agent's actions." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2666, 186 L.Ed.2d 768 (2013), *quoting* 1 Restatement (Third) of Agency § 1.01, Comment *f* (2005).

In *Townsend v. Univ. Hosp.-Univ. of Colorado*, 83 S.W.3d 913, 921 (Tex.App. –

Texarkana 2002, pet. denied)(citations omitted), the Sixth Court of Appeals explained:

> We cannot presume an agency relationship exists. An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task.

In addressing vicarious liability under the doctrine of respondeat superior, the Texas Supreme Court has similarly explained, "[t]he right to control remains the 'supreme test' for whether the master-servant relationship exists." *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 542 (Tex. 2002). Thus, absent proof of Loya's right of control, it cannot prove a fiduciary relationship with Cohen arising out of agency.

In response to Cohen's no-evidence motion for summary judgment on its breach of fiduciary duty claim, Loya presented the affidavit of Joe Ramirez, who had served as Controller and Chief Financial Officer of the Agency and the Company since September 2002. According to Ramirez, Cohen suggested that Loya secure loan agreements from Frost Bank, and with the consent of Loya management, including Fred Loya, Sr., Fred Loya, Jr., and Ramirez, Cohen initiated negotiations leading to a $5,000,000 loan, and subsequently "negotiated all of the other loan agreements that Loya entered into with Frost Bank as well as a loan agreement with Bear Stearns in 2006." Ramirez added that Cohen's authorization was restricted to negotiation of such contracts and he was without authority to sign any loan agreements or other contracts on behalf of the Loya companies. Cohen represented Loya on "numerous occasions" before the Texas Department of Insurance, sometimes accompanied by Ramirez or other Loya representatives, but "on a number of occasions" he appeared before and conferred with members of that agency by

9

himself. Cohen registered as a lobbyist in Texas for the Agency, and "lobbied extensively for legislative action" believed to be beneficial to Loya. Cohen acted as Loya's advocate in an attempt to operate in states outside of Texas and interviewed attorneys, lobbyists, and consultants in those states who Loya later retained to represent it in those efforts. Cohen coordinated lobbying efforts and served as an advocate for Loya in California, supporting legislative action that was approved. Ramirez explained that Cohen dealt with and negotiated with reinsurance companies and reinsurance intermediaries on behalf of Loya, and was authorized to seek other insurance company acquisitions and business opportunities, all on behalf of Loya, and, although Cohen was not authorized to enter into any agreements without Loya's consent, Cohen did negotiate non-disclosure agreements and initiated review of several opportunities for Loya. Ramirez' affidavit included as exhibits email correspondence to or from Cohen. Loya also directed the trial court to Cohen's counterclaim pleadings in support of the assertion that an agency relationship existed between them.

Loya maintains that the referenced evidence shows that Cohen acted on behalf of Loya "who clearly manifested its consent that he should so act" and, thus, "Cohen was Loya's agent." While the record clearly demonstrates that Cohen acted on behalf of Loya, it is barren of any evidence that Loya had the right to control the means and details of the process by which Cohen accomplished its tasks. That Loya consented to Cohen's acts does not demonstrate that Loya controlled the manner and means by which Cohen performed services for Loya. Moreover, because an independent contractor may be authorized to negotiate and yet have no authority to contract on behalf of another, we reject Loya's contention that Cohen's lack of authorization to contract constitutes evidence of Loya's control over Cohen or an agency relationship.

10

Having reviewed the evidence in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not, we conclude Loya has offered no more than a mere scintilla of evidence to prove the existence of its "right to control," and has therefore failed to meet its burden of producing summary judgment evidence raising a genuine issue of material fact regarding the first element of his breach of fiduciary duty cause of action -- the existence of a fiduciary relationship arising from a principal-agent relationship. TEX. R. CIV. P. 166a(i). Because the trial court did not err in granting Cohen's no-evidence motion for summary judgment, we need not address Loya's traditional summary judgment complaint regarding breach of fiduciary duty. *See* TEX. R. CIV. P. 166a(c) & (d); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)(if non-movant fails to produce more than scintilla of evidence under no-evidence standards of Rule 166a(i), a reviewing court need not analyze whether the movant's summary judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c)). We overrule Issue One.

### Attorneys' Fees

In Issue Two, Loya complains the trial court erred in awarding Cohen attorneys' fees for work related to the defense of Loya's breach of fiduciary duty claim because the trial court failed to require Cohen to segregate those fees. Loya sought an award of attorneys' fees in its declaratory judgment action, and Cohen sought attorney's fees based on its breach of contract counterclaim. Loya amended its petition to include a breach of fiduciary duty cause of action, against which Cohen presented a defense.

The trial court considered affidavits and testimony in support of the requested fees.

11

Cohen's trial counsel, Link Beck, testified that he had segregated attorneys' fees regarding venue, fraudulent use, fraudulent inducement, and quantum meruit claims, and had attempted to segregate fees regarding the prosecution of Cohen's breach of contract claim and the defense of Loya's breach of fiduciary duty claim but was unable to do so because too many of the services performed related to both claims.

In support of his assertion, Beck explained that a dispute had existed regarding the identities of the parties to the contract, and that both an earlier written contract and the verbal 1% Agreement existed pursuant to which Cohen had provided services. Some of the work performed related to Loya's assertion that Cohen had violated AICPA standards regarding financial statements it had provided to the Board of Insurance under the verbal contract, but also related to valuable services performed under the breach of fiduciary duty claims. Beck testified that identifying the parties to the contract aided in determining whether a relationship existed between the parties from which a fiduciary duty arose. According to Beck, Cohen could not successfully collect the amounts that were due unless Loya's breach of fiduciary duty claim was defeated.

Because Cohen had to defend against Loya's breach of fiduciary claim to prevail on its breach of contract claim, Cohen argued that segregation of its fees was not required. On cross-examination, Beck admitted that it was possible to win the breach of contract claim but "lose the breach of fiduciary duty claim," and "vice versa," but noted that most of the evidence would be identical to determine common issues including those relating to contract, to whom a duty is owed, correspondence between parties, services performed, and "the value of the benefit." He also explained that "[t]he bulk of the injuries however overlapped because the evidence overlapped," and described that factual disputes regarding identities of the parties related directly to Loya's

breach of fiduciary duty claim and Cohen's breach of contract claim because a question existed as to whom a duty was owed, if any, and why there was a duty. Beck related other factual disputes regarding accounting and restructuring services, the origin of the agreement for those services, and whether Cohen was providing valuable services for the company or the agency. Beck explained, "[a]ll of that ties in together and they all go to the same issues" and opined that evaluation of those factual disputes was necessary for the purpose of evaluating the breach of contract and breach of fiduciary duty claims. He agreed that his position regarding non-segregation of attorney fees is strictly predicated upon the premise that Cohen had to successfully defend the breach of fiduciary duty claim in order to collect all of the damages that Cohen might be awarded for breach of contract. "We had to beat the breach of fiduciary duty claim if Mr. Cohen was going to be allowed to collect the amounts that justly would be due to him." Beck noted that Loya had pled that Cohen owed the fiduciary duty but was acting through Cohen & Co. and Nehoc, and "would be liable for breach of fiduciary duty."

In a letter ruling, and in its findings of fact and conclusions of law on attorneys' fees, the trial court found that as to two Cohen attorneys, "there may be some fees that alone would not be recoverable; however, they are so intertwined with the recoverable ones, that they need not be or cannot be further segregated."[2]

Whether fees should be segregated is a question of law and the issue of proper segregation is a mixed question of law and fact. *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 374 (Tex.App. –El Paso 2010, no pet.). A party seeking attorneys' fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not. *Id*. However, when

---

[2] The trial court did not award attorneys' fees to Cohen's other attorneys.

discrete legal services advance both recoverable claims and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313 (Tex. 2006); *Penhollow Custom Homes, LLC*, 320 S.W.3d at 374. In *Varner v. Cardenas*, plaintiffs sued the defendants for failure to pay a promissory note executed for the sale of a ranch. *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007). The Texas Supreme Court determined that plaintiffs' attorneys' fees sought in pursuing a breach of contract action on a promissory note issued in the sale and purchase of a ranch and in defending against the defendants' counterclaim that the acreage of the ranch was less than represented, need not be segregated because defendants sought to reduce the amount collected on the promissory note and plaintiffs were required to overcome that defense to collect the full amount. *Id.*

To recover fees under Section 38.001, a party must (1) prevail on a cause of action for which fees are recoverable, and (2) recover damages. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195, 201 (Tex. 2004); *Penhollow Custom Homes, LLC*, 320 S.W.3d at 375. Under Section 38.001 of the Texas Civil Practice and Remedies Code, Cohen was permitted to recover fees incurred in pursuing its breach of contract claim -- the counterclaim in this case -- if the claim was valid. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)(West 2008). Did Cohen's counsel provide discreet legal services that advanced both a recoverable claim and unrecoverable claim so intertwined that they need not be segregated? *See Chapa,* 212 S.W.3d at 313-14. We conclude they did. The underlying facts and evidence upon which Cohen relied in prosecuting its breach of contract counterclaim and defending against Loya's breach of fiduciary duty action overlapped significantly. We overrule Issue Two.

14

**COHEN'S APPEAL**

Cohen raises seven issues in the cross-appeal and challenges the trial court's order striking its summary judgment affidavit, orders granting traditional and no-evidence summary judgment, order denying Cohen's motion to reconsider the traditional summary judgment motion, and final judgment.

**Was the Contract Terminable at Will?**

In Issue One, Cohen complains the trial court failed to distinguish between contracts of indefinite duration and those that specify determinable events, and in Issue Two, contends that because his deposition testimony "reflects that the duration of the 1% Agreement was for so long as there were net ceded premiums," some evidence exists that the 1% Agreement fixed an ascertainable fact or event by which the contract's duration can be determined, and presents a genuine issue of material fact. For these reasons, Cohen contends the summary judgment declaring the 1% Agreement terminable at will was improper.

Cohen relies on the Texas Supreme Court's ruling in *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010), in support of its contentions. There, the Texas Supreme Court considered a written contract between residential developers and a municipal water authority. *Id.* at 832. The "Sales Agreement and Lease of Facilities" included terms specifying that the developers were required to lease all operable portions of developed water utilities to the water authority "without charge until such time as the Authority acquires such portions[,] provided that such lease shall terminate upon the acquisition by the Authority of all the Facilities." *Id.* at 832, 841. The agreement provided the water authority was to reimburse the developers 70% of their construction costs upon the approval of a bond sale in any election it held

15

and receipt of voter-approved bond funds. *Id.* at 832-33. Because the contract contained no time limitation on the water authority's duty to include the reimbursement measures in every bond election and stipulated that both the lease of the facilities and the terms of the agreements terminated upon the water authority's purchase of those facilities, the court determined the purchase of the facilities was an ascertainable event which both parties could identify, and therefore the contract was not terminable at will. *Kirby Lake Dev. Ltd.*, 320 S.W.3d at 842. In reaching this conclusion, the court relied on its opinion in *City of Big Spring v. Bd. of Control*, 404 S.W.2d 810, 815 (Tex. 1966), in which the court observed, "[w]ords which fix an ascertainable fact or event, by which the terms of a contract's duration can be determined, make the contract definite and certain in that particular," and held that "the rule of law" providing that a contract may be terminated at the end of a reasonable time does not apply when a contract's language specifies a fixed and determinable term.

Loya counters that *Kirby Lake* is distinguishable because the facts there did not involve a contract for employment or personal services nor called for continuing performance. In Texas, an independent contractor is one "'who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.'" *See Durbin v. Culberson County*, 132 S.W.3d 650, 658 (Tex.App.—El Paso 2004, no pet.), *quoting Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961). Although we have determined that Cohen was not Loya's agent, and it is undisputed that Cohen was not Loya's employee, it is clear that Loya employed Cohen as an independent contractor to perform services for an indefinite duration. In his interrogatory answers, Martin states that he performed services for Loya from December 2002

16

through December 2008, and continued to work to satisfy lending institutions and regulatory agencies until his services were terminated.

In support of its motion for partial summary judgment seeking a declaration that the 1% Agreement had an indefinite term and was terminable at will, Loya offered as evidence Cohen's deposition testimony:

Q:      Now you've said . . . about this, for so long as there was premiums – how did you put it – net of ceded premiums, that would be the duration of this 1 percent agreement?

[Cohen]:  For as long, yes.

Q:      And was that a definite duration?

[Cohen]:  I would say it was indefinite.

Q:      Sir?

[Cohen]:  I would say it's indefinite.

Q:      Indefinite.  Okay.  For how many years was it supposed to last?

[Cohen]:  That was not discussed.

Thus, even if the duration of the 1% Agreement is related to "net of ceded premiums," Cohen admitted that the duration of the 1% Agreement was indefinite.  We also agree with Loya that Cohen's contention that the duration of the 1% Agreement was fixed based upon a future ascertainable event, if true, is insufficient to remove the agreement from application of the long-standing general employment-at-will rule that "when the term of service is left to the discretion of either party, or the term is left indefinite or determinable by either party, that either may put an end to it at will and so without cause."[3]  *See East Line & R.R.R. Co. v. Scott*, 72 Tex.

---

[3] In *East Line*, the Supreme Court determined that because the term of employment was dependent on the will of one of the parties, to be exercised in the future, there was no contract binding the parties for any fixed period, thus there

70, 10 S.W. 99, 102 (1888); *see also Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723 (Tex. 1990)(in Texas, long-standing rule is that employment for indefinite term may be terminated at will and without cause); *Johnson v. Waxahachie Ind. Sch. Dist.*, 322 S.W.3d 396, 398 (Tex.App. –Houston [14th Dist.] 2010, no pet.); *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585 (Tex.App. –Fort Worth 2005, no pet.)("This general doctrine is still applicable today.").

Cohen has not shown that the trial court "failed to distinguish between contracts of definite duration and contracts that specify determinable events." Having reviewed the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not, we conclude the trial court did not err in determining that the 1% Agreement was terminable at will. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Issues One and Two are overruled.

In Issue Three, Cohen notes that Loya's motion for partial summary judgment sought both the trial court's declaration that Loya had no liability under the 1% Agreement after February 20, 2009, and dismissal of Cohen's breach of contract claim. Cohen complains that Loya failed to meet its burden to present evidence that it had rescinded the 1% Agreement, and was no longer liable under the agreement nor benefitting from Cohen's services after February 20, 2009.

In support of its motion for partial summary judgment, Loya tendered its letter dated February 20, 2009, to Martin and Cohen & Co. terminating the 1% Agreement effective December 31, 2008. In its response to the motion, Cohen asserted that Loya improperly terminated the 1% Agreement on February 20, 2009, retroactively to December 31, 2008, but does not discuss an

---

was no meeting of the minds regarding the period of service, a material element of the contract. *East Line*, 10 S.W. at 102.

18

absence of evidence regarding its liability under the agreement or the benefits that Loya allegedly continued to enjoy after February 20, 2009.

Loya responds that Cohen's complaint was not raised in its response for consideration by the trial court. Cohen replies that it was Loya's burden to demonstrate that it no longer reaped the benefits of the agreement as a component of proper termination, and argues that because Loya failed to carry that burden, Cohen had no duty to respond.

Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c). Because these issues were not presented to the trial court in its summary judgment response, Cohen is not permitted to raise these arguments for the first time on appeal. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979)(summary judgment non-movant could not raise for first time on appeal additional fact issue that was not raised in its response); *Rangel v. Progressive County Mut. Ins. Co.*, 333 S.W.3d 265, 269 (Tex.App. –El Paso 2010, pet. denied); *Aguilar v. Trujillo,* 162 S.W.3d 839, 854 (Tex.App. – El Paso 2005, pet. denied)(issue waived where non-movant did not present it in the summary judgment response). We overrule Issue Three.

In Issue Four, Cohen notes that Loya's motion for partial summary judgment anticipatorily addressed a not-yet-raised exception to the rule that a contract of indefinite duration is terminable at will when it contemplates the expenditure of substantial sums of money or other investments by one of the parties preparatory to or in accordance with performance under the contract. Cohen complains that although the motion recites Martin's deposition testimony that Cohen had not incurred any substantial expenditure in relation to his performance of the 1% Agreement, Loya

19

failed to file the deposition excerpt as part of the summary judgment record. Accordingly, it argues that the absence of the excerpt in the record renders summary judgment improper. Moreover, it argues that had the excerpt been included as evidence, it is nevertheless silent as to whether Cohen incurred substantial expenditures in preparing for performance as opposed to expenditures incurred in relation to actual performance of the 1% Agreement.

In its motion, Loya recited five questions and answers in an excerpt attributed to Cohen's deposition testimony, referring to them by page and line numbers, and identified the excerpt as being included in the same "Exhibit 2" presenting summary judgment evidence that contains Cohen's "indefinite duration" testimony. However, the referenced pages are not included in that exhibit to the motion.

Loya argues that although the copies of the deposition excerpts were inadvertently omitted from the summary judgment exhibit and constitute "specific reference(s) to the discovery," Cohen's complaints cannot be sustained because it failed to raise the issue in the trial court. *See* TEX. R. CIV. P. 166a(c); *see also Grainger v. W. Cas. Life Ins. Co*., 930 S.W.2d 609, 613-14 (Tex.App. –Houston [1st Dist.] 1996, writ denied)(non-movant who complained for the first time on appeal that movant did not properly submit its summary judgment evidence because copies of the deposition excerpts were not filed with the court, waived complaint by failing to raise the objection in the trial court); *Williams v. Conroe Indep. Sch. Dist.,* 809 S.W.2d 954, 957 (Tex.App. –Beaumont 1991, no writ)(failure to object to propriety of summary judgment evidence in trial court waived error on appeal); *compare Salmon v. Miller*, 958 S.W.2d 424, 428 (Tex.App.—Texarkana 1997, pet. denied)(where notice of intent to use unfiled discovery did not point to page numbers, make any other specific references to the location of the evidence upon

20

which the party intended to rely, or point out the exact language of the evidence, appellate court would not consider such evidence). Here, the trial court had before it the recited language of the referenced deposition testimony, as well as references to the page and line numbers where that evidence could be found in the unfiled discovery, and Cohen failed to complain about that evidence in the trial court. Because we agree that Cohen has failed to preserve this complaint for review, we overrule Issue Four.

In Issue Five, Cohen asserts the trial court abused its discretion in striking Martin's affidavit in which he clarified his use of the term "indefinite" at his desposition. We review a trial court's ruling concerning the admission or exclusion of summary judgment evidence for an abuse of discretion. *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 147 (Tex.App. –El Paso 2011, no pet.); *Barraza v. Eureka Company,* 25 S.W.3d 225, 228 (Tex.App. – El Paso 2000, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *First State Bank of Mesquite*, 342 S.W.3d at 147; *Bowie,* 79 S.W.3d at 52.

An affidavit which is executed after a deposition and which presents a contradiction on a material point without explanation for the change merely creates a sham fact issue and the contradictory statements in the affidavit may be disregarded. *See First State Bank of Mesquite*, 342 S.W.3d at 148; *see also Plunkett v. Connecticut General Life Insurance,* 285 S.W.3d 106, 119 (Tex.App. –Dallas 2009, pet. denied); *Pando v. Southwest Convenience Stores,* 242 S.W.3d 76, 79 (Tex.App. –Eastland 2007, no pet); *Trostle v. Trostle,* 77 S.W.3d 908, 915 (Tex.App. –Amarillo

21

2002, no pet.); *Cantu v. Peacher,* 53 S.W.3d 5, 10–11 (Tex.App. –San Antonio 2001, pet. denied); *Eslon Thermoplastics v. Dynamic Systems, Inc.,* 49 S.W.3d 891, 901 (Tex.App. –Austin 2001, no pet.); *Burkett v. Welborn,* 42 S.W.3d 282, 286 (Tex.App. –Texarkana 2001, no pet.); *Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App. –Houston [1st Dist.] 1997, no pet.)(party cannot file affidavit to contradict his own deposition testimony without any explanation of the reason for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment; absent such explanation, appellate court assumes the sole purpose of the affidavit is to avoid summary judgment and, as such, presents merely a "sham" fact issue). While some appellate courts have either limited the sham affidavit doctrine or have declined altogether to adopt it, we have applied the doctrine. *See Morgan v. Straub,* No. 08–00–00191–CV, 2001 WL 925760, at 2-4 (Tex.App. –El Paso August 16, 2001, opin. on reh'g, no pet.); *see also Pierce v. Washington Mutual Bank,* 226 S.W.3d 711, 717–18 (Tex.App. –Tyler 2007, pet. denied); *Del Mar College District v. Vela,* 218 S.W.3d 856, 862 (Tex.App. –Corpus Christi 2007, no pet.); *Davis v. City of Grapevine,* 188 S.W.3d 748, 756 (Tex.App. –Fort Worth 2006, pet. denied); *Thompson v. City of Corsicana Housing Authority,* 57 S.W.3d 547, 557 (Tex.App. –Waco 2001, no pet.).

Cohen argues the trial court erroneously applied the sham affidavit doctrine because Martin's affidavit "is harmonious with his deposition testimony," any "subtle differences" between the deposition testimony and the subsequent affidavit "are not so egregious that the affidavit should be discarded," and the stricken portions of the affidavit "clearly raise a fact issue regarding the 1% Agreement's duration and foreclose summary judgment[.]" We disagree.

When asked if the duration of the 1% Agreement, with reference to the "for so long as" language, was definite, Cohen twice expressly stated that the duration of the agreement was

22

indefinite. In response to Loya's motion for partial summary judgment, Cohen attached Martin's affidavit. Loya filed objections to this evidence and, in granting Loya's motion, the trial court explained, "[a]fter considering the pleadings and the argument of counsel, the Court believes that portions of [Martin W. Cohen's] affidavit [contradict] the prior deposition testimony of the affiant and therefore cannot be considered to raise a fact issue on a material issue presented in the Motion." The trial court struck the portions of Cohen's affidavit testimony stating that the Agency would pay Cohen "for as long as there were net written premiums," "[t]his is for an indefinite term if the term is expressed as the passage of a period of time, such as a week, a month or a year," and "[i]t is definite, however because the duration of the obligation is tied to the event of there being net written premium."

Because the affidavit stated that the term of the agreement was indefinite if expressed as a passage of time, but was definite with regard to net written premium, it contradicts Cohen's deposition testimony that the term of the agreement was indefinite. Cohen offered the trial court no explanation for this change in testimony. Consequently, we conclude the trial court did not abuse its discretion in striking portions of Martin's affidavit testimony. We overrule Issue Five.

Finally, we address Issues Six and Seven together. In Issue Six, Cohen alleges the trial court erred by granting summary judgment on its fraudulent inducement claims because there was some evidence in the record of Loya's intent not to perform the 1% Agreement. In Issue Seven, Cohen argues that some evidence exists to support the element of damages.

The Texas Supreme Court has identified fraudulent inducement as "a particular species of fraud," which requires that "the elements of fraud . . . be established as they relate to an agreement between the parties." *Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex. 2001); *see also In re*

23

*ReadyOne Indus., Inc*., 400 S.W.3d 164, 169 (Tex.App. –El Paso 2013, no pet.).   The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.   *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009).   "'A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.'"   *Aquaplex, Inc.,* 297 S.W.3d at 774, *quoting Formosa Plastics,* 960 S.W.2d at 48.

In its counterclaim, Cohen alleged in part that the Agency, acting through Fred Loya, Jr., represented to Martin that as long as Loya did not have to pay a reinsurance broker because it had net written premium, the Agency would pay Cohen & Co. 1% of the net written premium and that when the representation was made, Loya had no intention of paying.   In its summary judgment motion, Loya argued that there was no evidence to support either Cohen's assertion that Loya did not intend to perform, or that Cohen sustained any damages by reason of such misrepresentation. Loya countered that Cohen was asserting a claim of fraud based upon the alleged contract for payment under the 1% Agreement "for so long as" Loya received non-ceded premium revenue, a contract that Loya argued did not exist.   In its brief, Loya notes that prior to filing its summary judgment motion, the trial court had already ruled that the 1% Agreement was terminable at will by either party at any time because the agreement had an indefinite term, and argues, as it did in its motion, that a promise to perform a contract that is terminable at will at any time cannot, as a matter of law, support a claim of fraudulent inducement.   Loya also alleged there was no evidence

24

of damages.

During the pendency of this case, the Fifth Circuit asked the Texas Supreme Court to answer whether, under Texas law, at-will employees may bring fraud claims against their employers for loss of their employment. *Sawyer v. E.I. Du Pont De Nemours & Co.,* 430 S.W.3d 396, 399 (Tex. 2014). The court initially observed that, "if the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable agreement," nor support a cause of action for fraud or breach of contract. *Sawyer,* 430 S.W.3d at 401 (citations omitted). The court further explained:

> To recover for fraud, one must prove justifiable reliance on a material misrepresentation. A representation dependent on continued at-will employment cannot be material because employment can terminate at any time. Nor can one justifiably rely on the continuation of employment that can be terminated at will. "I will if I want to" is not fraud. And no one can claim recovery of damages for the loss of an employment relationship he had no right to continue.

*Sawyer,* 430 S.W.3d at 401 (citations omitted). The court concluded, "an at-will employee cannot bring an action for fraud that is dependent on continued employment." *Id*. at 402. The Texas Supreme Court has similarly determined that in the absence of a binding agreement, "there is no detrimental reliance, and thus no fraudulent inducement claim. That is, when a party has not incurred a contractual obligation, it has not been induced to do anything." *Haase*, 62 S.W.3d at 798.

In its supplemental letter of authorities, Cohen notes that the holding in *Sawyer* was premised on the existence of an at-will employment contract but argues the principal issue regarding the 1% Agreement is whether it was indefinite and, thus, terminable at will. Cohen again urges that the 1% Agreement is not terminable at will because it specifies a fixed and

25

determinable term as addressed in *Kirby Lake*, and argues that it is not clear whether "the same underlying policy considerations of at-will employment apply in the context of a services contract like the 1% Agreement." *Kirby Lake*, 320 S.W.3d at 842. Cohen observes that *Sawyer* is based on the fraud elements of material misrepresentation and justifiable reliance, and Loya's motion attacked the elements of intent and damages. It therefore argues that *Sawyer* provides no basis for affirming the motion for summary judgment on Cohen's claim of fraudulent inducement.

We have determined that the trial court correctly ruled that the 1% Agreement between Loya and Cohen was terminable at will. In light of the Texas Supreme Court's analysis and holding in *Sawyer*, we conclude the underlying policy considerations of at-will employment are applicable in the context of the personal services contract executed between Loya and Cohen because the term of the agreement was indefinite and, therefore, terminable at will by any party at any time, which forecloses the possibility of Cohen's justifiable reliance upon the alleged representation. We overrule Issue Six. Consequently, we need not address Issue Seven. The judgment of the trial court is affirmed.

ANN CRAWFORD McCLURE, Chief Justice

October 31, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

26