Affirmed and Majority and Dissenting Opinions filed June 23, 2016.



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00345-CV

---

## ALBERT LUJAN D/B/A TEXAS WHOLESALE FLOWER CO., Appellant

## V.

## NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, NAVISTAR INTERNATIONAL TRANSPORTATION CORP., INTERNATIONAL TRUCK AND ENGINE CORPORATION AND SANTEX TRUCK CENTERS, LTD., Appellees

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2009-77458**

---

## M A J O R I T Y   O P I N I O N

A purchaser of trucks for use in a wholesale flower business appeals the trial court's grant of two summary judgments in favor of the truck manufacturer and related parties, holding that the purchaser's claims were barred by the trucks' limited warranties and that the purchaser lacked standing to sue after transferring the business's assets to a wholly owned corporation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Albert Lujan has been in the wholesale flower business since about 1988. In 2005, Lujan purchased two wholesale flower businesses operated from a single location in San Antonio. Doing business as Texas Wholesale Flower Company, Lujan sold and delivered perishable floral products and floral hard goods throughout central and south Texas. Because the delivery trucks that came with the businesses were old and past their useful life, Lujan purchased five CF600 trucks manufactured by Navistar, Inc. (Navistar) to replace the existing fleet. Lujan financed and purchased the trucks through Santex Truck Centers, Ltd. (Santex) and took delivery of the vehicles on December 17, 2005.

In June 2006, Lujan decided to incorporate his business, forming Texas Wholesale Flower Co., Inc. (the Corporation). The Corporation's federal income tax return for that year reflected that Lujan made a "section 351" election in which he transferred the assets of his business to the Corporation in a tax-free exchange, after which Lujan retained 100% of the Corporation's stock.[1] The transferred assets included the five CF600 trucks. The Corporation's income tax returns for both 2006 and 2007 represented that the trucks were corporate assets. On March 28, 2008, however, the Texas Secretary of State declared the Corporation's charter or certificate forfeited.

In December 2009, Lujan sued Navistar, Santex, and other entities in his individual capacity, doing business as Texas Wholesale Flower Company. For convenience, we will refer to Navistar, Santex, and the other named defendants

---

[1] *See* 26 U.S.C. § 351(a) ("No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control … of the corporation."); *see also Bongiovanni v. Comm'r*, 470 F.2d 921, 924 (2d Cir. 1972) (characterizing § 351 as "a relief provision to encourage tax-free business reorganizations").

collectively as "the Navistar parties."[2] Lujan alleged that the five CF600 trucks he purchased continually broke down while in service, causing Lujan to lose customers and perishable products. Lujan asserted claims of breach of express and implied warranties and sought damages of about $3.7 million. In later-amended petitions, Lujan added allegations that in February 2008, a representative of the Navistar parties advised Lujan that he must purchase different trucks at a higher price, and that if Lujan did not comply, Navistar would cease to honor its warranty obligations by the end of the month. According to Lujan, he incurred additional debt to purchase the new trucks, rather than suffer injury to his business in the event that the Navistar parties acted on their threat. Lujan alleged that the Navistar parties imposed duress and business coercion that compelled him to submit involuntarily to their demand.

In late September 2013, the Navistar parties filed a "Motion for Summary Judgment Pursuant to Rules 166a(b) and 166a(i)." The basis of the Navistar parties' motion was that Lujan's warranty claims should be dismissed because his warranty rights were disclaimed or, alternatively, that Lujan had no evidence to prove his claims for breach of the alleged warranties.

Within days of the Navistar parties' summary judgment motion, the Corporation filed an intervention, alleging that it was a Texas corporation and that "[b]y section 351 election and transfer, [Lujan] is Intervenor's sole shareholder." The Corporation adopted the allegations Lujan made in his individual capacity and asserted that the Corporation and Lujan had suffered damages in excess of $15 million. The Corporation was represented by the same attorney who was representing Lujan individually in his suit against the Navistar parties.

---

[2] Lujan does not discuss the named defendants other than Navistar and Santex, and Navistar's counsel represents in its brief that on appeal it is representing only appellees Navistar, Inc. and Santex Truck Centers, Ltd.

At the time of the intervention, the case had been on file for nearly four years and was a few weeks away from the scheduled trial date. The Navistar parties moved to strike the intervention as untimely and argued that any claims by the Corporation were barred by limitations.

The Corporation filed a response to the Navistar parties' motion to strike, in which it represented that Lujan transferred all of his wholesale flower company's assets to the Corporation:

> On June 12, 2006, at his accountant's recommendation, [Lujan] made an IRS Section 351 election transfer. Pursuant to the election, [Lujan] transferred all of the assets and liabilities of Texas Wholesale Flower Co. to Texas Wholesale Flower Co., Inc., in exchange for 100% ownership of the stock.

The section 351 election was attached to the Corporation's response as evidence of Lujan's transfer of his assets, and the Corporation affirmed that the document was included in the Corporation's 2006 federal income tax return. Later, the Navistar parties would rely on this same document to support their summary judgment motion on standing.

At the hearing on the motion to strike, Lujan's counsel, speaking on behalf of the Corporation, explained that when the Navistar parties requested discovery relating to Lujan's damage model, he saw the Corporation's tax returns and asked Lujan about them. According to counsel, he accepted Lujan's explanation that Lujan never actually transferred legal title to the trucks and did not do anything with the Corporation. Lujan's counsel went on to explain that later, while reading through the 2006 return, he found the section 351 transfer, which he characterized as representing a transfer of all of the sole proprietorship's assets "lock, stock and barrel" and "broom and dustpan … absolutely everything is transferred over."

Counsel went on to explain that for "a third" of Texas Wholesale Flower

4

Company's existence it was a sole proprietorship, but that the "last two thirds of its existence it was a corporate entity." Counsel further explained that, because the operation of the business did not change in any way, Lujan "never knew that its essential nature had changed." In response to an inquiry from the trial court, however, counsel acknowledged that "on paper" the sole proprietorship and the Corporation were separate entities.

The trial court ultimately granted the Navistar parties' motion to strike, concluding that the Corporation's attempted intervention amounted to a "substantial change in the posture of the suit" that was inappropriate given the length of time since the sale of the trucks had occurred and the years the case had been on file. On appeal, Lujan does not challenge the trial court's ruling on the Corporation's attempted intervention.

Around the same time, Lujan individually filed a motion for leave to file a fourth amended petition containing the same causes of action, but increasing the damages sought to more than $15 million. The trial court denied Lujan's motion for leave after an oral hearing.[3]

In December 2013, the Navistar parties filed a second motion for summary judgment titled "Defendants' Motion for Partial Summary Judgment Pursuant to Rules 166a(b) and 166a(e)." In this motion, the Navistar parties argued that Lujan individually could not assert a claim for damages because he had transferred his business assets and liabilities to the Corporation, and therefore the Corporation owned any claim for breach of warranties. The Navistar parties supported their motion with four exhibits: (1) Lujan's third amended petition; (2) a copy of the

---

[3] In January of 2014, after the corporation's intervention was denied and Navistar had filed its second summary judgment motion on standing, Lujan sought leave to file a fifth amended petition, which was also denied after an oral hearing shortly before the scheduled trial date.

5

Corporation's certificate of formation, filed in the Office of the Texas Secretary of State; (3) the section 351 election from the Corporation's 2006 federal income tax return showing the transfer of assets on June 12, 2006; and (4) the Secretary of State's declaration that the Corporation's charter or certificate was forfeited on March 28, 2008. A hearing on the Navistar parties' motion was set for Monday, January 27, 2014.

In response to the Navistar parties' contention that Lujan lacked standing to sue because he had transferred his assets to the Corporation, Lujan filed a response and supporting affidavit on January 18, in which Lujan averred in relevant part:

> 1. At all times I did business as Texas Wholesale Flower Company. At no time have I transferred my assets and liabilities of Texas Whole Flower Company. I did not transfer ownership of my trucks nor my business to a corporation.
>
> * * *
>
> 2. Texas Wholesale Flower Co., Inc. … never carried debt obligations to American Express, Navistar Financial Corporation, Texstar Bank, National Plant & Floral, Ford Credit or any other creditor, … never acquired, owned, held title to nor operated motor vehicles, including the trucks made the basis of my lawsuit against Defendants, … [and] never conducted business.

Relying on this affidavit, Lujan argued that the Navistar parties' allegation that he transferred his assets and liabilities to a corporation at any time was false. Lujan also argued that Texas law did not recognize the election as an instrument to effect a transfer of assets and liabilities and that the document was not evidence of such a transfer.

On January 24, the Navistar parties filed a reply brief complaining that Lujan's response and affidavit represented a "complete contradiction" of the written and oral representations made to the trial court during the Corporation's attempted intervention just a few months earlier, as well as the evidence Lujan had

6

previously produced to the Navistar parties. The Navistar parties argued that Lujan's contradictory affidavit was a sham affidavit that failed to provide "any explanation for this change." Additionally, the Navistar parties maintained that Lujan's affidavit contained conclusory statements unsupported by any facts and was made in bad faith.

The Navistar parties' reply included six exhibits: (1) a copy of the Corporation's response to the Navistar parties' motion to strike the Corporation's intervention; (2) an email from Lujan's law firm in response to the Navistar parties' request for discovery, with attachments consisting of taxpayer copies of the Corporation's 2006 Federal S Corporation Tax Return (including the section 351 election) and the Corporation's 2007 Texas Franchise Tax Report, prepared and sent to Lujan by his accountant; (3) an October 3, 2013 letter from the Navistar parties' counsel notifying Lujan that the Navistar parties were reserving their right to use all documents produced by "all other parties at the time of trial or an any hearing in these matters" including all documents produced in response to any requests for disclosure or production; (4) a transcript of the hearing on the Navistar parties' motion to strike the Corporation's intervention; (5) promissory notes and other banking documents between the Corporation and Texstar National Bank; and (6) copies of the Corporation's 2007 Federal S Corporation Tax Return and 2008 Texas Franchise Tax Report, prepared and sent to Lujan by his accountant.

In response, Lujan objected to the Navistar parties' reply and moved to strike both the reply and the attached evidence because they were not filed at least twenty-one days before the scheduled hearing as required by Rule 166a(d) of the Texas Rules of Civil Procedure. Alternatively, Lujan requested a resetting of the hearing for twenty-one days to comply with Rule 166a(c).

At the hearing on the Navistar parties' motion for summary judgment, the

Navistar parties argued that the reply attaching the additional evidence only became necessary after Lujan took a position in his response and affidavit contrary to that recently taken in support of the Corporation's intervention, when Lujan's counsel argued that the Corporation needed to intervene in the suit because counsel had discovered that all of Lujan's assets had been transferred to the Corporation. The trial court then denied Lujan's motion to strike the reply and his alternative motion to reset the hearing for a later date.

Turning to the substance of the summary judgment hearing, Lujan's counsel argued that the representations he made during the intervention were on behalf of the Corporation, not Lujan himself, and could not be considered judicial admissions against Lujan. In response to the trial court's questions about counsel's earlier representation that he had explained the situation of the intervention with Lujan, Lujan's counsel explained that Lujan told him that the section 351 transfer was done at the accountant's recommendation for tax purposes, but that Lujan never transferred legal title to the trucks to the Corporation. Counsel confirmed that it was Lujan's position that all of the claims belong to Lujan and thus the Corporation's intervention was unnecessary. Upon further questioning by the trial court, however, Lujan's counsel acknowledged that the Corporation had filed tax returns and borrowed money, contrary to Lujan's statements in his affidavit that the Corporation never conducted any business.

In response to Lujan's assertion that the Navistar parties had no evidence that a transfer ever occurred, the Navistar parties argued that the section 351 transfer and Lujan's counsel's representations on behalf of Lujan and the Corporation that all of the assets had been transferred were sufficient to support its summary judgment motion. The Navistar parties also argued that Lujan's affidavit did not create a fact issue because it was a sham affidavit and was made in bad

8

faith, and therefore it should be stricken. Additionally, the Navistar parties argued that if more evidence was needed to prove that a transfer of assets occurred, the evidence in the reply—such as Lujan's representation to the federal government in the 2006 income tax return that the assets were transferred and the evidence that Lujan used those assets to take out loans in the Corporation's name—provided the proof.

After an extended discussion, the trial court asked the Navistar parties to provide additional briefing on the application of the sham affidavit doctrine. Lujan's counsel then asked for an opportunity to file a response to the Navistar parties' reply, to which the trial court said, "You can provide whatever you want to provide to the Court. I'm not barring that." Both parties filed supplemental briefs.

On February 5, 2014, the trial court granted the Navistar parties' summary judgment motion on standing and ruled that (1) Lujan's statements in his affidavit in which he denied transferring the trucks or his wholesale flower company's assets and liabilities to the Corporation were excluded as conclusory; (2) Lujan's affidavit was made in bad faith and was stricken "as a sanction under TRCP and CPRC"; and (3) Lujan's affidavit was stricken under the sham affidavit doctrine. On the same day, the trial court also granted the Navistar parties' summary judgment motion on warranty disclaimers. Lujan filed a motion for new trial that was overruled by operation of law. This appeal followed.

## ISSUES AND ANALYSIS

On appeal, Lujan raises seven issues falling into two broad categories in which Lujan contends that the trial court erred in: (1) granting the Navistar parties' summary judgment motion on warranty disclaimers; and (2) granting the Navistar parties' summary judgment motion on standing. Because we conclude that the second category of issues relating to the Navistar parties' summary judgment

9

motion on standing is dispositive of the appeal, we address those issues and do not reach Lujan's issues concerning the trial court's grant of the Navistar parties' summary judgment motion on the warranty disclaimers.

STANDING

On appeal, Lujan contends that the trial court erred in granting the Navistar parties' summary judgment motion on standing because the Navistar parties failed to prove that Lujan transferred his assets to the Corporation, and Lujan's evidence raised a genuine issue of material fact on the issue. Lujan also challenges the trial court's rulings striking Lujan's affidavit based on the sham affidavit doctrine and as a sanction, and its ruling that Lujan's statements that he did not transfer his trucks, business, or assets to the Corporation were conclusory. Further, Lujan complains that the Navistar parties' reply and supporting evidence should have been stricken because they were not filed and served at least twenty-one days before the hearing and the Navistar parties did not seek leave to file new evidence. Alternatively, Lujan argues that the hearing on the Navistar parties' motion for summary judgment should have been reset twenty-one days to comply with the rules of civil procedure.

## A. Standards of Review

We review a trial court's grant of summary judgment de novo. *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 607 (Tex. 2013). To prevail on its motion, the Navistar parties were required to prove that no genuine issue of material fact exists and that they were entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). If the Navistar parties' motion and evidence establishes its right to judgment as a matter of law, then the burden shifts to Lujan, the non-movant, to raise a genuine issue of material fact sufficient to defeat summary judgment. *See M.D.*

10

*Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

In reviewing the summary judgment evidence, we take as true all evidence favorable to Lujan and we indulge every reasonable inference and resolve any doubts in Lujan's favor. *See Joe*, 145 S.W.3d at 157. We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Id.*

Standing is a constitutional prerequisite for a party to bring a lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The issue of standing focuses on the question of who may bring a lawsuit. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). A court has no jurisdiction over a claim pursued by a party who lacks standing to assert the claim. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). Under Texas law, a party has standing to bring suit if (1) it has suffered a distinct injury, and (2) there exists a real controversy that will be determined by the judicial determination sought. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).

The absence of standing can be raised in a traditional motion for summary judgment. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a party's standing de novo and construe the pleadings in favor of the plaintiff. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

We review a trial court's decision to exclude or admit summary judgment evidence for an abuse of discretion. *Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 926–27 (Tex. App.—El Paso 2014, pet. denied); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet.

11

denied). An abuse of discretion exists only when the court's decision is made without reference to any guiding rules and principles or is arbitrary or unreasonable. *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.). When reviewing matters committed to the court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *Fred Loya Ins. Agency*, 446 S.W.3d at 927.

## B. The Navistar Parties' Summary Judgment Motion on Standing

In their summary judgment motion on standing, the Navistar parties argued that Lujan owned the trucks until June 12, 2006, when he transferred ownership of the trucks and his entire flower business to the Corporation in exchange for 100% ownership of the Corporation's stock. Because Lujan did not have standing to recover individually for damages sustained by the Corporation, the Navistar parties contended that Lujan was barred from recovering damages after June 12, 2006.

On appeal, Lujan argues that the section 351 election is legally insufficient proof that the trucks were transferred and, even if it is some evidence of a transfer, Lujan's affidavit in which he avers that he never transferred his assets to the Corporation raises a genuine issue of fact concerning the transfer.

To place in context the Navistar parties' challenge to Lujan's standing to maintain his suit, we will briefly discuss the well-established law concerning a party's standing to sue individually or on behalf of a corporation. We will then consider Lujan's procedural and evidentiary complaints before applying the summary judgment standard of review to the evidence.

### 1. Standing to sue individually or as a corporation

Although a shareholder may own 100% of the corporation's stock, the corporation itself holds the assets, including its causes of action. *El T. Mexican*

12

*Rests., Inc. v. Bacon*, 921 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1995, writ denied). A shareholder of a corporation may not sue in his own name and for his own benefit on a cause of action belonging to the corporation, even if that shareholder is indirectly injured. *Id.* (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). This is true even for sole shareholders. *Id.*

When a corporation becomes incapacitated due to the forfeiture of its corporate charter, the title to its assets become bifurcated; legal title remains in the corporation and beneficial title vests in the shareholders. *Carpaint, Inc. v. Pelican Partners, L.P.*, 13-07-00751-CV, 2008 WL 3971559, at *4 (Tex. App.—Corpus Christi Aug. 28, 2008, pet. denied) (mem. op.) (citing *Bacon*, 921 S.W.2d at 251). While the shareholders' beneficial title confers capacity on them to prosecute the corporation's claims on the corporation's behalf, "'[t]his entitlement to go into court *for the corporation* does not amount to the right *to recover individually* on the corporate cause of action.'" *Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *7 (Tex. App.—Austin May 27, 2010, pet. denied) (mem. op.) (quoting *Bacon*, 921 S.W.2d at 251) (emphasis in original).[4]

Until a corporation is dissolved—either voluntarily or involuntarily—it maintains legal title to its assets, and the shareholders cannot bring suit in their own name but must sue only as representatives for the corporation. *See id.*; *Bacon*, 921 S.W.2d at 253; *White v. Indep. Bank, N.A.*, 794 S.W.2d 895, 898 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

There is no evidence, and Lujan does not argue, that the Corporation has been formally dissolved; nor does Lujan challenge the applicable legal principles.

---

[4] Capacity is a party's legal authority to go into court to prosecute or defend a suit. *Carpaint*, 2008 WL 3971559, at *3. To bring suit and recover on a cause of action, a plaintiff must have both standing and capacity. *Id.*

Lujan's appeal is instead directed to whether the Navistar parties proved as a matter of law that Lujan transferred all his assets, including the trucks, to the Corporation and whether Lujan's evidence raised a genuine issue of material fact precluding summary judgment in the Navistar parties' favor.

Before addressing the sufficiency of the evidence, we next turn to Lujan's complaint that the trial court should not have considered the Navistar parties' reply, in which the Navistar parties challenged Lujan's supporting affidavit and offered additional evidence in support of their arguments.

### 2. The trial court's consideration of the Navistar parties' reply and supporting evidence

Lujan contends that the trial court erred in overruling his motion to strike the Navistar parties' reply and objections to the Navistar parties' supporting evidence attached to the reply. Specifically, Lujan complains that the Navistar parties' reply was filed three days before the summary judgment hearing, and the Navistar parties introduced additional summary judgment evidence less than twenty-one days before the hearing in violation of the summary judgment rules. *See* Tex. R. Civ. P. 166a(c), (d). Alternatively, Lujan argues that the trial court erred in denying his request for resetting of the hearing for twenty-one days to comply with Rule 166a. *See id.*

Generally, a trial court may not consider summary judgment evidence not referenced in or incorporated into the motion. *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 236 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When nothing appears in the record to indicate that late-filed summary judgment evidence was filed with leave of court, we presume that the trial court did not consider it. *Pipkin*, 383 S.W.3d at 663 (citing *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985)). However, a trial court may accept summary judgment

14

evidence filed late, even after summary judgment, as long as the court affirmatively indicates in the record that it accepted or considered the evidence. *Pham*, 449 S.W.3d at 236; *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

At the hearing on the Navistar parties' summary judgment motion, the trial court denied Lujan's motion to strike. The transcript also reflects that the trial court considered the exhibits attached to the Navistar parties' reply. Further, the trial court's order granting the motion states, "the Court having considered all of Defendants' briefs and pleadings in support of the same and all of Plaintiff's briefs and pleadings in opposition to the same, as well as all exhibits and the oral arguments of all counsel, finds that said motion is meritorious."

Therefore, the trial court did not abuse its discretion in denying Lujan's motion to strike the Navistar parties' reply and supporting evidence. *See Pham*, 449 S.W.3d at 236; *Auten*, 209 S.W.3d at 702. Further, the trial court did not abuse its discretion by refusing Lujan's alternative request for a resetting of the hearing for twenty-one days, because Lujan offered no reason for continuing the hearing other than to comply with the rule's twenty-one day requirement and, in any event, the trial court provided Lujan an opportunity to file supplemental briefing before ruling on the Navistar parties' summary judgment motion.

### 3. *Striking Lujan's affidavit under the sham affidavit doctrine*

Lujan also challenges each of the trial court's evidentiary rulings, arguing that his affidavit was not a sham affidavit, was not made in bad faith, and did not contain conclusory statements. Because we now adopt the sham affidavit doctrine and hold that the trial court did not err in striking the affidavit as a sham on the facts before it, we do not address Lujan's other complaints.

Generally, a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) (per curiam). When conflicting inferences may be drawn from a deposition and an affidavit made by the same person and filed in a summary judgment proceeding, a fact issue is presented that will preclude summary judgment. *Id.* at 5.

However, some of our sister courts have held that when an affidavit is executed after the deposition and there is a clear contradiction on a material point without explanation, the sham affidavit doctrine may be applied and the contradictory statements in the affidavit may be disregarded. *See, e.g.*, *Pando v. Sw. Convenience Stores, L.L.C.*, 242 S.W.3d 76, 79 (Tex. App.—Eastland 2007, no pet.); *Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.); *Eslon Thermoplastics*, 49 S.W.3d at 901; *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.); *Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.).[5] As the *Farroux* court stated*:*

> A party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change. Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents merely a "sham" fact issue.

---

[5] Other courts of appeals have rejected or limited the sham affidavit doctrine. *See Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 717–18 (Tex. App.—Tyler 2007, pet. denied); *Del Mar Coll. Dist. v. Vela*, 218 S.W.3d 856, 862 (Tex .App.—Corpus Christi 2007, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 756 (Tex. App.—Fort Worth 2006, pet. denied); *Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 557 (Tex. App.—Waco 2001, no pet). The Supreme Court of Texas has not expressly ruled on the applicability of the doctrine.

962 S.W.2d at 111.

This Court has not yet decided whether to adopt the sham affidavit doctrine. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props, L.P.*, 391 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that it was unnecessary to decide whether to adopt sham affidavit doctrine because issue was not preserved for appeal). However, this Court has previously signaled its agreement with the doctrine in a case in which it was ultimately unnecessary to determine its applicability. *See Blan v. Ali*, 7 S.W.3d 741, 746 n.3 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("While we agree that [*Farroux*] precludes the trial court from considering an affidavit that contradicts deposition testimony without an explanation for the change in testimony, the supplemental affidavit does *not* contradict Dr. Reisbord's deposition testimony.") (emphasis in original).

Lujan argues that the sham affidavit doctrine does not apply because the only deposition testimony that the Navistar parties point to as contradicting Lujan's affidavit is an acknowledgment by Lujan that he incorporated his business in 2006 or 2007. Lujan argues that this testimony does not contradict Lujan's statements in his affidavit, and he notes that he did not testify that corporate tax returns were not filed or that a corporation was not formed. Lujan also argues that the Navistar parties cannot rely on the unsworn statements of Lujan's counsel because no court has extended the doctrine to include such statements. Even if such statements were considered, Lujan argues, his counsel's statements do not contradict the statements in Lujan's affidavit. Further, Lujan asserts that his counsel provided a satisfactory explanation for any perceived change in position at the January 27 hearing when he explained that the section 351 election was made on the accountant's recommendation, making Lujan a 100% shareholder, but nothing else about the business changed.

The Navistar parties contend that the trial court did not err by striking Lujan's affidavit on the grounds that it was a sham affidavit. The Navistar parties point out that Lujan's corporation, represented by Lujan's counsel, sought to intervene on the grounds that all of the assets of the sole proprietorship, including the trucks, had been transferred to his corporation. In response to the Navistar parties' motion to strike the intervention, the Corporation unequivocally represented that on June 12, 2006, Lujan made a section 351 election transfer, and pursuant to that election, Lujan "transferred all of the assets and liabilities of Texas Wholesale Flower Co. to Texas Wholesale Flower Co., Inc., in exchange for 100% ownership of the stock." The Corporation supported its response with the section 351 election from its 2006 federal tax return, which it maintained "indicates the exchange." Lujan's counsel, on behalf of the Corporation, likewise represented to the trial court that Lujan had transferred "absolutely everything" to the Corporation. Navistar argues that the Corporation's pleadings and counsel's arguments to the court in support of the Corporation's interventions constitute judicial admissions that Lujan transferred his assets, including the trucks at issue, to his corporation.[6]

When deposed, Lujan admitted in his deposition that he incorporated his business in 2006 or 2007. However, when Navistar moved for summary judgment on the grounds that Lujan did not have standing to sue because his sole

---

[6] A judicial admission is a clear, deliberate, and unequivocal statement that occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). A judicial admission not only relieves an adversary from making proof of the fact admitted, it also bars the party himself from disputing it. *Id.* Pleadings may be used as summary judgment evidence when they contain statements rising to the level of admitting a fact or conclusion which is directly adverse to that party's theory or defense of recovery. *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 824 (Tex. App.—El Paso 2010, no pet.); *Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 504 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 92 (Tex. App.—El Paso 1998, no pet.).

proprietorship's assets—including the trucks at issue—had been transferred to the Corporation, Lujan responded with an affidavit in which he stated that he never transferred the assets and liabilities of his sole proprietorship, and he did not transfer ownership of his trucks or his business to the Corporation. He also averred, among other things, that the Corporation never carried debt obligations to any creditor, including Texas Bank; never acquired, owned, or held title to the trucks; and never conducted business. Lujan made no attempt in his affidavit to explain the myriad discrepancies between his averments and positions previously taken by his solely-owned corporation and his own counsel before the court on the material issue of whether Lujan or his corporation owned the assets and claims that are the basis of Lujan's suit.

Given the circumstances before the trial court in this case, we cannot say that the trial court's evidentiary ruling striking Lujan's affidavit was an abuse of its discretion. Although Lujan's affidavit did not directly contradict his prior deposition testimony, it directly contradicted the following: (1) the Corporation's judicial admission in support of its attempted intervention that Lujan's assets, including the trucks at issue, had been transferred to the Corporation; (2) the Corporation's reliance on the section 351 election filed with its 2006 federal income tax return as evidence that Lujan had transferred all of the assets and liabilities of his sole proprietorship to the Corporation in exchange for 100% of the stock; (3) Lujan's counsel's representations on behalf of the Corporation that the section 351 election and corporate tax returns demonstrated that Lujan's assets were transferred "lock, stock and barrel" to the Corporation in 2006; and (4) the tax returns and banking documents reflecting that, contrary to Lujan's affidavit, the Corporation actively conducted business and engaged in banking transactions.

We also reject Lujan's assertion that his counsel's representations to the trial

19

court were consistent with Lujan's affidavit and provided a satisfactory explanation for Lujan's position. Although counsel explained that the incorporation was merely an accounting procedure and Lujan never actually transferred the trucks or changed his business in any way, the federal income tax returns and the banking documents Navistar presented in its reply tell a different story. For example, the Corporation's 2006 federal tax return included the section 351 election, in which the Corporation represented to the Internal Revenue Service, under penalty of perjury, that Lujan had transferred his assets to the Corporation in exchange for stock—a transfer that enabled Lujan to take advantage of a corporate structure for his business without adverse tax consequences.[7]

The 2006 and 2007 tax returns also reflected that the Corporation had sales of almost $1.6 million and over $2.4 million, respectively, despite Lujan's assertion in his affidavit that the corporation "never conducted business." Further, banking documents produced to the Navistar parties show, contrary to Lujan's assertion in his affidavit that he "never carried debt obligations to … Texstar Bank," that the corporation obtained two promissory notes from Texstar National Bank in the amounts of $50,000.00 and $72,500.00. Therefore, to the extent that Lujan argues that the sham affidavit doctrine should not be applied because Lujan's understanding of the effect of the transfer is consistent with the averments in his affidavit, we disagree. *See Fred Loya Ins. Agency*, 446 S.W.3d at 927 (rejecting argument that 'subtle differences' between deposition testimony and subsequent affidavit were 'not so egregious' as to preclude application of sham affidavit doctrine).

---

[7] As reflected on the signature line of the income tax forms, statements in the section 351 transfer and the federal tax returns are made subject to penalties of perjury. *See* 26 U.S.C. §§ 6065 (tax returns and statements filed with the IRS must be made under penalties of perjury), 7206(1) (criminal penalties for false statements made "under penalties of perjury").

Lujan also contends, however, that any judicial admissions or representations by the Corporation or his counsel during the intervention proceedings cannot be attributed to him because the Corporation is a separate and distinct entity. Lujan is correct that he and his corporation are separate legal entities, as discussed above. However, the evidence shows that Lujan is the record owner of 100% of the Corporation's stock; therefore, only Lujan could have caused his corporation to take part in the asset transfer and file the corporate tax returns. Further, the taxpayer copies of the corporate tax returns Lujan produced to Navistar in discovery were accompanied by correspondence to Lujan from his accountant, instructing Lujan to sign and file them. On this record, the trial court could reasonably have concluded that Lujan was attempting to take one position on behalf of his solely owned corporation and—in the same proceeding—take the opposite position individually for the sole purpose of creating a material fact issue to preclude summary judgment. We cannot say that the trial court abused its discretion in concluding that Lujan's affidavit was a transparent sham that warranted the application of the sham affidavit's rationale on the facts before it.

We recognize that the trial court struck Lujan's affidavit on the basis of the sham affidavit doctrine in circumstances that differ from the usual fact pattern in which the doctrine is applied by those courts that have adopted it.[8] That alone,

---

[8] The dissent criticizes any application of the sham affidavit doctrine beyond "the *Farroux* pattern" because other Texas appellate courts have declined to extend it. However, the dissent's authorities do not support her argument. For example, in *Argovitz v. Argovitz*, this court concluded that the issue was not preserved, but further noted that even if the doctrine were applied to disregard the conflict between a deposition and affidavit, a fact issue precluding summary judgment remained between the deposition and an earlier hearing. *See* No. 14-07-00206-CV, 2008 WL 5131843, at *16–21 (Tex. App.—Houston [14th Dist.] Dec. 9, 2008, pet. denied) (mem. op.). The other two cases are from courts that have rejected the rationale behind the sham affidavit doctrine generally. *See Pierce*, 226 S.W.3d at 717–18 (rejecting application of doctrine's rationale to contradiction between interrogatory answer and deposition based on *Randall*); *Smith v. Mosbacher*, 94 S.W.3d 292, 295–96 & n.1 (Tex. App.—Corpus Christi 2002, no pet.) (holding that complaint that affidavit filed in response to summary judgment was a sham

21

however, should not preclude the application of the doctrine's rationale when analogous circumstances warrant it. *See Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 929 (S.D. Tex. 2002) (applying sham affidavit doctrine when plaintiff's affidavit contradicted both his prior deposition testimony and statements made to federal government in Social Security Administration questionnaire). We therefore hold that the trial court did not abuse its discretion in striking Lujan's affidavit under the sham affidavit doctrine. *See, e.g.*, *Fred Loya Ins. Agency*, 446 S.W.3d at 928; *Eslon Thermoplastics*, 49 S.W.3d at 901; *Farroux*, 962 S.W.2d at 111.

Finally, Lujan contends that a sham affidavit complaint is an objection to the form of the affidavit, and therefore the trial court was required to give him an opportunity to amend the affidavit. *See Broadnax v. Kroger Texas, L.P.*, No. 05-04-01306-CV, 2005 WL 2031783, at *5 (Tex. App.—Dallas Aug. 24, 2005, no pet.) (mem. op.) ("Kroger's general objection that Broadnax's affidavit is a sham affidavit because it contradicts his deposition testimony is an objection complaining of a defect in the form of his affidavit."). Under Rule 166a(f), defects in the form of affidavits or attachments "will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." Tex. R. Civ. P. 166a(f).

Assuming without deciding that Lujan's argument is correct, it does not assist him because the trial court expressly granted Lujan an opportunity to file a reply brief and anything else he wished to file. Although Lujan did file a supplemental brief, he did not take the opportunity to file an amended affidavit. We therefore overrule Lujan's contention that the trial court erred by striking his affidavit.

---

because it contradicted subsequent deposition testimony was not preserved for appeal, but even if deposition testimony was considered as summary-judgment evidence, it merely created a fact issue, citing *Randall*). These cases are not similar to the present appeal.

### 4. Application of the summary judgment standard of review to the evidence

Having determined that the trial court did not abuse its discretion by considering the Navistar parties' reply and supporting evidence in support of their summary judgment motion on standing, and having further determined that the trial court did not abuse its discretion by striking Lujan's affidavit under the sham affidavit doctrine, we turn to whether the Navistar parties met their burden to demonstrate as a matter of law that Lujan lacked standing to pursue his claims against the Navistar parties.

As discussed in detail above, the Navistar parties presented evidence that Lujan incorporated his wholesale flower business in 2006. Lujan also chose to transfer the assets and liabilities of the business to the Corporation. This transfer was reflected in the section 351 election accompanying the Corporation's 2006 federal income tax return, in which Lujan represented to the IRS, under penalty of perjury, that Lujan was transferring specific assets—including the five trucks that are the subject of Lujan's claims—in exchange for 100% of the shares of stock in the Corporation. Navistar's evidence also showed that the Corporation conducted substantial business, bringing in gross receipts totaling roughly $4 million over a two-year period, taking out business loans, and seeking favorable tax treatment from the IRS. Although the Corporation's charter was eventually forfeited, no evidence was presented that the Corporation was formally dissolved.

Lujan argues, however, that a section 351 election "is not recognized in Texas as an instrument to transfer legal title to assets and liabilities." In support of this contention, Lujan cites provisions of the Texas Transportation Code. *See* Tex. Transp. Code §§ 501.071(a) ("[A] motor vehicle may not be the subject of a subsequent sale unless the owner designated on the title submits a transfer of

23

ownership of the title."); 502.042 ("The department may not register or renew the registration of a motor vehicle for which a title is required under Chapter 501 unless the owner … obtains a title for the vehicle …."). Lujan further asserts that section 351 merely addresses the federal tax treatment of gains and losses in the event of a transfer, but does not apply if, as he maintains, no transfer occurred.

Lujan's argument that the section 351 election alone is insufficient evidence of a transfer assumes that the only evidence the trial court should have considered is the one-page section 351 election the Navistar parties attached to their summary judgment motion. We have already held, however, that the trial court did not abuse its discretion by considering the Navistar parties' reply and supporting evidence, including the Corporation's 2006 and 2007 federal income tax returns reflecting that the sole proprietorship's assets, including the trucks, were transferred to the Corporation and treated as corporate assets. The Navistar parties' evidence facially established its right to judgment as a matter of law on the grounds that Lujan lacked standing to sue individually on claims belonging to the Corporation. *See Mossler*, 2010 WL 2133940, at *7; *Bacon*, 921 S.W.2d at 253; *White*, 794 S.W.2d at 898. The burden thus shifted to Lujan to raise a genuine issue of material fact sufficient to defeat summary judgment.

In response to the Navistar parties' motion, Lujan offered his affidavit, in which he generally denied transferring the trucks or his assets and liabilities to the corporation and denied that the corporation conducted business of any kind. The trial court struck Lujan's affidavit under the sham affidavit doctrine, and we have affirmed the trial court's ruling. Lujan presented no other evidence to raise a genuine issue of material fact that Lujan individually, rather than the Corporation, had standing to pursue the claims for truck-related damages against the Navistar parties.

24

Consequently, Lujan was required to file suit on behalf of the Corporation. Because Lujan did not do so, he lacked standing to pursue causes of action belonging to the Corporation and the trial court lacked subject-matter jurisdiction to render judgment awarding him damages individually on any causes of action. We therefore overrule Lujan's issues relating to the trial court's grant of the Navistar parties' summary judgment motion on standing and do not reach Lujan's other issues.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the Navistar parties on standing and the striking of Lujan's affidavit in response to the motion as a sham affidavit.


/s/    Ken Wise
Justice


Panel consists of Justices Jamison, McCally, and Wise (McCally, J., dissenting).

25